UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

EMANI LOVE, et al.,                          NO. 2:15-cv-11834

     Plaintiff,                               HON. NANCY EDMUNDS

v                                            MAG. ELIZABETH A. STAFFORD

RUTH JOHNSON,

     Defendant.

---

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES<br>  UNION FUND OF MICHIGAN<br>Jay D. Kaplan (P38197)<br>Daniel S. Korobkin (P72842)<br>Michael J. Steinberg (P43085)<br>Attorneys for Plaintiffs<br>2966 Woodward Avenue<br>Detroit, MI 48201<br>(313) 578-6812 | Erik A. Grill (P64713)<br>Kevin R. Himebaugh (P53374)<br>Jeanmarie Miller (P44446)<br>Denise Barton (P41535)<br>James E. Long (P53251)<br>Assistant Attorneys General<br>Attorneys for Defendant Johnson<br>Michigan Department of Attorney General<br>Civil Litigation, Employment &<br>  Elections Division<br>P.O. Box 30736<br>Lansing, MI 48909<br>(517) 373-6434 |
| AMERICAN CIVIL LIBERTIES<br>  UNION FOUNDATION<br>John A. Knight<br>Attorney for Plaintiffs<br>180 North Michigan Avenue, Suite 2300<br>Chicago, IL 60606<br>(312) 201-9740 | |
| PROSKAUER ROSE LLP<br>Steven R. Gilford<br>Michael F. Derksen<br>Jacki L. Anderson<br>Attorneys for Plaintiffs<br>70 West Madison, Suite 3800<br>Chicago, IL 60602<br>(312) 962-3550 | |

---

**DEFENDANT'S MOTION TO DISMISS**

Defendant Ruth Johnson, through her attorneys, Bill Schuette, Attorney General for the State of Michigan and Erik A. Grill, Assistant Attorney General for the State of Michigan, and in support of her Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), states as follows:

1.     Plaintiffs allege that they are transgender individuals seeking to change the sex designation on their state-issued drivers' licenses.

2.     Defendant Ruth Johnson is the elected Secretary of State for the State of Michigan.

3.     Mich. Comp Laws 257.307(1) provides that an applicant for a driver's license shall supply a photographic identification document, a birth certificate, or "other sufficient documents as the secretary of state may require" to verify the identity and citizenship of the applicant.

4.     Pursuant to that authority, the Department of State has established a Driver's License Manual setting forth policies and procedures for the administration of driver's licenses in Michigan.

5.     The Driver's License Manual provides a means for persons to change the sex designation on their driver's license.

6.     To change the sex designation, the Driver's License Manual requires an applicant to provide a certified birth certificate showing the sex of the applicant.

7.      The display of a person's sex on their driver's license does not disclose private information.

8.      A Michigan driver's license lists sex ("M" or "F"), not gender. Plaintiffs do not have a fundamental liberty interest in substituting new information—gender identity—on their driver's license.  Plaintiffs' claim that the Driver's License Manual violates their substantive due process right to privacy must fail.

9.      A claim for violation of the First Amendment based upon compelled speech must show either dictated speech or mandatory disclosure of facts that burden protected expression.

10.     Neither Defendant Johnson nor the Driver's License Manual dictates the content of any protected speech.

11.     The Plaintiffs have not alleged any protected speech is burdened by the factual information contained on a drivers' license.

12.     The information on driver's licenses is not speech protected by the First Amendment.

13.     Plaintiffs' First Amendment claims must fail.

14.     Equal protection claims require government discrimination that burdens a fundamental right, targets a suspect class, or treats individuals differently without a rational basis for doing so.

3

15.     Plaintiffs have failed to identify a fundamental right or suspect class.

16.     There is a rational basis for the birth certificate requirement to change an applicant's sex on their driver's license.

17.     Plaintiffs' equal protection claims fail as a matter of law.

18.     All residents of Michigan must provide a birth certificate in order to change the sex on their driver's licenses.

19.     Accordingly, Plaintiffs are treated the same as all other Michigan residents when it comes to the requirements that must be fulfilled in order to change the sex on their driver's licenses.

20.     Plaintiffs' claim that Defendant Johnson has violated their right to interstate travel also fails as a matter of law.

21.     The Public Health Code of Michigan—Mich. Comp. Law 33.2831(c)—requires an affidavit from a physician certifying that sex-reassignment surgery has been performed if a person desires to obtain a new birth certificate with a changed sex designation.

22.     Although an applicant seeking to change the sex on their driver's license is required to provide a birth certificate, there is no requirement for anyone to change the sex on their driver's license.

23.     Changing one's sex on their driver's license is completely voluntary.

24.     Plaintiffs are not required to undergo any unwanted medical procedure.

25.     Plaintiffs have failed to state a claim that Defendant Johnson has violated their liberty interest in refusing unwanted medical treatment.

26.     Plaintiffs have failed to state a claim for which relief can be granted, and their complaint must be dismissed under Fed. R. Civ. P. 12(b)(6).

27.     Concurrence in this motion was sought on July 13, 2015, but concurrence was denied.

## RELIEF REQUESTED

For these reasons and the reasons stated more fully in the accompanying brief, Defendant Ruth Johnson respectfully requests that this Honorable Court dismiss the claims against her in their entirety, together with any other relief the Court determines to be appropriate under the circumstances.

Respectfully submitted,

BILL SCHUETTE
Attorney General


*s/Erik A. Grill*
Erik A. Grill (P64713)
Kevin Himebaugh (P53374)
Jeanmarie Miller (P44446)
Denise C. Barton (P41535)
James E. Long (P53251)
Assistant Attorneys General
Civil Litigation, Employment & Elections Division
Attorneys for Defendant
P. O. Box 30736
Lansing, Michigan  48909
(517) 373-6434
grille@michigan.gov

Dated:  July 16, 2015

6

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2015, I electronically filed the foregoing

paper with the Clerk of the Court using the ECF system which will send

notification of such filing of the foregoing document as well as via U.S. Mail to all

non-ECF participants.

*/s/Erik A. Grill*
Erik A. Grill
Assistant Attorney General
Attorneys for Defendant
Civil Litigation, Employment & Elections
Division
P.O. Box 30736
Lansing, Michigan  48909
(517) 373-6434
grille@michigan.gov
P64713

UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF MICHIGAN

EMANI LOVE, et al.,                          NO. 2:15-cv-11834

     Plaintiff,                          HON. NANCY EDMUNDS

v                                            MAG. ELIZABETH A. STAFFORD

RUTH JOHNSON,

     Defendant.

---

AMERICAN CIVIL LIBERTIES
  UNION FUND OF MICHIGAN
Jay D. Kaplan (P38197)
Daniel S. Korobkin (P72842)
Michael J. Steinberg (P43085)
Attorneys for Plaintiffs
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6812

AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
John A. Knight
Attorney for Plaintiffs
180 North Michigan Avenue, Suite 2300
Chicago, IL 60606
(312) 201-9740

PROSKAUER ROSE LLP
Steven R. Gilford
Michael F. Derksen
Jacki L. Anderson
Attorneys for Plaintiffs
70 West Madison, Suite 3800
Chicago, IL 60602
(312) 962-3550

Erik A. Grill (P64713)
Kevin R. Himebaugh (P53374)
Jeanmarie Miller (P44446)
Denise Barton (P41535)
James E. Long (P53251)
Assistant Attorneys General
Attorneys for SOM Defendant Johnson
Michigan Department of Attorney General
Civil Litigation, Employment &
  Elections Division
P.O. Box 30736
Lansing, MI 48909
(517) 373-6434

---/

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Bill Schuette
Attorney General

Erik A. Grill (P64713)
Assistant Attorney General
Attorneys for Defendant Johnson
Civil Litigation, Employment &
Elections Division
P. O. Box 30736
Lansing, MI 48909
(517) 373-6434
grille@michigan.gov

Dated:  July 16, 2015

ii

# TABLE OF CONTENTS

Page

Table of Contents ................................................................. i

Index of Authorities ............................................................ ii

Concise Statement of Issues Presented ................................... v

Statement of Facts ............................................................... 1

Argument ......................................................................... 3

I.    Michigan's Driver's License Policy does not violate Plaintiffs' right
      to privacy under the substantive due process protections of the
      Fourteenth Amendment. ............................................... 3

II.   Plaintiffs have failed to state a claim for violation of the First
      Amendment based upon a theory of compelled speech. ............ 10

III.  Plaintiffs have failed to state a claim for a violation of the Equal
      Protection Clause. ...................................................... 14

      A.    Plaintiffs have not alleged an equal protection burden on a
            fundamental right. ............................................... 18

      B.    Plaintiffs have not alleged membership in a recognized suspect
            or quasi-suspect class. .......................................... 18

      C.    Plaintiffs have not met the criteria for a "class of one" equal
            protection claim. ................................................. 21

      D.    The Department of State's procedure for changing sex on a
            driver's license satisfies rational basis review. ............... 22

IV.   Michigan's driver's license policy does not violate Plaintiffs' right to
      interstate travel ........................................................ 24

V.    Michigan's Driver's License Policy does not violate Plaintiffs' liberty
      interest in refusing unwanted medical treatment ................... 27

Conclusion and Relief Requested .......................................... 30

Certificate of Service ......................................................... 31

i

# INDEX OF AUTHORITIES

Page

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................3

*Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974 (6th Cir. 2012)...............17

*Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998) ...........................................................7

*Braninburg v. Coalinga State Hosp.*, No. 1:08-cv-01457-MHM, 2012 U.S.
 Dist. LEXIS 127769, 2012 WL 3911910, at *8 (E.D. Cal. Sept. 7, 2012)..........24

*Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261 (1990) .....................33

*Davis v. Prison Health Services.*, 679 F.3d 433 (6th Cir. 2012) .............................23

*Davis v. Prison Health Servs.*, 679 F.3d 433 (6th Cir. 2012)..................................26

*Dean v. United States¸* 436 F. Supp. 2d 485 (E.D. N.Y. 2006)................................28

*DeBoer v. Snyder*, 772 F.3d 388 (6th Cir. 2014) .....................................................31

*District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52
 (2009)...................................................................................................................5

*Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008)....................22

*Forbush v. Wallace*, 405 U.S. 970, 92 S. Ct. 1197 (1972) ......................................28

*Hayes v. Board of Regents of Kentucky State University*, 495 F.2d 1326 (6th
 Cir. 1974)............................................................................................................30

*J.P. v. DeSanti*, 653 F.2d 1080 (6th Cir. 1981) ...................................................6, 10

*Jamison v. Davue*, No. S-11-cv-2056 WBS, 2012 U.S. Dist. LEXIS 40266,
 2012 WL 996383, at *3 (E.D. Cal. Mar. 23, 2012).............................................24

*Johnson v. Bredesen*, 624 F.3d 742 (6th Cir. 2010) ...............................................27

*Johnston v. Univ. of Pittsburgh of the Commonwealth Sys. of Higher Educ.*,
 2015 U.S. Dist. LEXIS 41823, *22-23 (W.D. Pa. Mar. 31, 2015) .....................25

*Kaeo-Tomaselli v. Butts*, No. 11-cv-00670 LEK, 2013 U.S. Dist. LEXIS 13280, 2013 WL 399184, at *5 (D. Haw. Jan. 31, 2013) ...................................24

*Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998) ...........................7, 8

*Lambert v. Hartman*, 517 F.3d 433 (6th Cir. 2008) ...........................................7, 12

*Lee v. Willey*, 2012 WL 4009629, 10 (E.D. Mich. 2012)........................................11

*Lopez v. City of New York*, No. 05-cv-10321-NRB, 2009 U.S. Dist. LEXIS 7645, 2009 WL 229956, *13 (S.D. N.Y. Jan. 30, 2009)......................................24

*Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307 (1976) ...................................23

*Mt. Elliott Cemetery Ass'n v. City of Troy*, 171 F.3d 398 (6th Cir. 1999) ..............18

*Perry v. McGinnis*, 209 F.3d 597 (6th Cir. 2000)....................................................18

*Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256 (1979)..........23

*Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) ..........................................16

*Riley v. National Federation of the Blind of N.C., Inc.*, 487 U.S. 781(1988) .........14

*Saenz v. Roe*, 526 U.S. 489 (1999) ........................................................................30

*San Antonio Independent School District v. Rodriguez*, 411 U.S. 1 (1973)............23

*Scarborough v. Morgan County Board of Education*, 470 F.3d 250 (6th Cir. 2006)......................................................................................................................18

*Shaw v. District of Columbia*, 944 F. Supp. 2d 43 (D.D.C., 2013) ..........................1

*Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826 (6th Cir. 2009).......................................................................................................................17

*Thayer v. Chiczewski,* 697 F.3d 514 (7th Cir. 2012) ..............................................22

*TriHealth, Inc. v. Board of Commissioners*, 430 F.3d 783 (6th Cir. 2005).............17

*U.S. Citizens Ass'n v. Sebelius*, 705 F.3d 588 (6th Cir., 2013) ..............................34

*United Pet Supply, Inc. v. City of Chattanooga, Tenn.*, 768 F.3d 464 (6th Cir. 2014)................................................................................................................10

*United States v. O'Brien*, 391 U.S. 367 (1968) ........................................................14

*United States v. Schnitzer,* 526 F.2d 536 (2nd Cir. 1977) ........................................28

*Village of Willowbrook v. Olech,* 528 U.S. 562 (2000)...........................................26

*Walker v. Texas Division, Sons of Confederate Veterans, Inc.*, __ U.S. __ ,
   2015 WL 2473375 (June 18, 2015).....................................................................16

*Washington v. Glucksberg*, 521 U.S. 702 (1997) .....................................................4

*Weiner v. Klais & Co.*, 108 F.3d 86 (6th Cir. 1997)...................................................2

*West Virginia Board of Education v. Barnette*, 319 U.S. 624 (1943) ....................13

*Whalen v. Roe*, 429 U.S. 589 (1977) .........................................................................5

*Whitlow v. Hodges*, 539 F.2d 582 (6th Cir. 1976)...................................................28

*Wooley v. Maynard*, 430 U.S. 705 (1977) ...............................................................13

*Wurzelbacher v. Jones-Kelley*, 675 F.3d 580 (6th Cir. 2012) ..................................6

**Statutes**

Mich. Comp. Laws § 333.2831(c) .............................................................. 2, 32, 34

## CONCISE STATEMENT OF ISSUES PRESENTED

1. The substantive protections of the Due Process Clause of the United States Constitution do not encompass a general right to nondisclosure of private information.  Plaintiffs have not shown that they meet either of the two narrow exceptions to establish an informational-right-to-privacy claim—*i.e.*, that the defendant directly released information that may lead to bodily harm or information that relates to matters of a sexual, personal, and humiliating nature.  Should this Court dismiss Plaintiffs' right-to-privacy claim?

2. Federal courts have recognized First Amendment claims based upon compelled speech claims where the government dictates the content of speech or requires disclosure of facts that burden protected expression. Plaintiffs' claims in this case fail to allege that Secretary Johnson has neither dictated content or burdened any protected expression, nor  compelled any statement of facts—or that any protected speech is involved in state-issued drivers' licenses.  Have Plaintiffs failed to state a claim for violation of the First Amendment?

3. To state an Equal Protection claim, a plaintiff must allege government discrimination that burdens a fundamental right, targets a suspect class, or treats one differently than others who are similarly situated without any rational basis.  Here, Plaintiffs have failed to identify a fundamental right or suspect class that is being burdened or targeted, and they cannot show that Secretary Johnson lacks a rational basis for the policy establishing requirements to change sex designation on state-issued drivers' licenses. Have Plaintiffs failed to state a claim for violation of the Equal Protection clause of the Fourteenth Amendment?

4. The constitutional right to interstate travel encompasses a right that new citizens of a state must be treated the same as existing residents of the state. The challenged Driver's License Policy treats all Michigan citizens the same, regardless of whether they were born in Michigan or not.  Should this Court dismiss Plaintiffs' right-to-interstate-travel claim?

5. The substantive protections of the Due Process Clause of the United States Constitution provide a liberty interest in refusing unwanted medical treatment.  The challenged Driver's License Policy does not force medical treatment on Plaintiffs, or anyone.  Should this Court dismiss Plaintiffs' unwanted-medical-treatment claim?

## STATEMENT OF FACTS

This is a civil rights action brought under 42 U.S.C. § 1983 by Emani Love, Tina Seitz, Codie Stone, and three other plaintiffs who wish to proceed using their initials, E.B., A.M., and K.S.  Plaintiffs sue Ruth Johnson, the Michigan Secretary of State.  Plaintiffs are all transgender persons who challenge what they refer to as a "Driver's License Policy," which requires a birth certificate to change the sex designation on a driver's license.  Plaintiffs allege violations of 1) the right to privacy; 2) freedom of speech under the First Amendment; 3) the right to equal protection; 4) the right to interstate travel; and 5) the right to refuse unwanted medical treatment.

In their complaint, Plaintiffs repeatedly use the term "gender," and claim that "gender" and "sex" can be used interchangeably.  But these terms are not the same.  "Sex" refers to "[a] person's 'biological status as either male or female,'" and is "based 'primarily on physical attributes such as chromosomes, hormone prevalence, and external and internal anatomy.'"  *Shaw v. District of Columbia*, 944 F. Supp. 2d 43, 48, fn. 2 (D.D.C., 2013).  "Gender" is different.  "Gender identity or expression means a gender-related identity, appearance, expression, or behavior of an individual, regardless of the individual's assigned sex at birth."  *Id.* at fn. 3 (internal quotes omitted).

1

Plaintiffs allege that they are unable to change the "gender" on their driver's licenses.  But a Michigan driver's license does not list "gender."  Instead, a driver's license includes "[t]he full legal name, date of birth, address of residence, height, eye color, **sex**, digital photographic image, expiration date, and signature of the licensee."  Mich. Comp. Laws § 257.310(2)(b)(emphasis added).  Michigan birth certificates also list "sex," not "gender."  *See* Mich. Comp. Laws § 333.2831(c).

Plaintiffs refer to, but do not attach, the "Driver's License Policy."  In fact, the birth certificate requirement comes from the Driver License Manual (DLM).  *See* Exhibit A.[1]  The DLM refers to "changing sex," not gender.  As discussed below, Plaintiffs' action should be dismissed for failure to state a claim.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(internal quotes and citation omitted).  Although a court must accept as true all of the allegations

_____

[1] Although this is a motion to dismiss rather than a motion for summary judgment, "'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.'"  *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) quoting *Venture Assoc v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1993).

contained in a complaint, "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Id*. Dismissal

should be granted "where the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct. . . ." *Id*. at 679.

## ARGUMENT

### I. Michigan's Driver's License Policy does not violate Plaintiffs' right to privacy under the substantive due process protections of the Fourteenth Amendment.

In Count 1 of the complaint, Plaintiffs allege that the Due Process Clause of

the Fourteenth Amendment provides substantive protections against disclosing

sensitive, personal information. (R. 1, Complaint, ¶¶ 106-108). Plaintiffs are

concerned about the perceived risks from having "highly personal information"

disclosed to "each person who sees the license." *Id*. at ¶ 109. Plaintiffs' claim is

without merit.

Any "substantive" component to the Due Process Clause protects only

"those fundamental rights and liberties which are, objectively, deeply rooted in this

Nation's history and tradition," as well as those fundamental rights and liberties

that are "implicit in the concept of ordered liberty, such that neither liberty nor

justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S.

702, 720–721 (1997)(Internal quotes and citations omitted). Furthermore, the

Supreme Court has "required in substantive-due-process cases a 'careful description' of the asserted fundamental liberty interest." *Id* at 721.

Substantive protections under the Due Process Clause are strictly limited. "In a long line of cases, [the Supreme Court has] held that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." *Washington*, 521 U.S. at 720 (internal citations omitted).

The Supreme Court has "always been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this unchartered area are scarce and open-ended." *Id*.  When there is no long history of a right—here, the right to change the sex designation on a driver's license without a corrected birth certificate—"[t]he mere novelty of such a claim is reason enough to doubt that 'substantive due process' sustains it." *District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 72 (2009).

"The cases sometimes characterized as protecting 'privacy' have in fact involved at least two different kinds of interests.  One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589,

598-600 (1977).  Thirty five years later, the Sixth Circuit reiterated this basic

framework when it observed that these two types of interests have been identified

as being protected by "the right to privacy that is rooted in the substantive due

process protections of the Fourteenth Amendment." *Wurzelbacher v. Jones-*

*Kelley*, 675 F.3d 580, 585 (6th Cir. 2012).  Here, the interest advanced by Plaintiffs

involves the disclosure of personal matters on their driver's licenses —namely the

identification of their biological sex rather than their preferred gender identity.

The Sixth Circuit refers to this type of interest as the "informational right to

privacy." *Id*. at 586.

Regarding Plaintiffs' disclosure claim (*i.e.*, informational right to privacy),

"the Constitution does not encompass a general right to nondisclosure of private

information." *J.P. v. DeSanti*, 653 F.2d 1080, 1090 (6th Cir. 1981).  The right to

privacy protected by the Constitution is limited only to "those personal rights that

can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.'" *Id*.

(citation omitted).

The Sixth Circuit has "limited the right of informational privacy only to

interests that implicate a fundamental liberty interest." *Wurzelbacher*, 675 F.3d at

586.  Under this demanding standard, the Sixth Circuit has recognized this type of

privacy interest in only two circumstances: "(1) where the release of personal

information may lead to bodily harm, and (2) where the released information

5

relates to matters of a sexual, personal, and humiliating nature." *Id*.  Plaintiffs

claim that both of these circumstances apply to them.  (R. 1, Complaint, ¶ 108).

Notwithstanding their conclusory recitation of the applicable law, however,

Plaintiffs' complaint fails to state a claim.

The two circumstances that could support an informational-privacy claim

were discussed in *Lambert v. Hartman*, 517 F.3d 433 (6th Cir. 2008).  The first

circumstance (potential for bodily harm) comes from *Kallstrom v. City of

Columbus*, 136 F.3d 1055 (6th Cir. 1998).  The second circumstance (information

of a sexual, personal, and humiliating nature) comes from *Bloch v. Ribar*, 156 F.3d

673 (6th Cir. 1998).  But the facts of *Kallstrom* and *Bloch* are quite dissimilar from

the facts alleged in Plaintiffs' complaint.

In *Kallstrom*, the three plaintiffs were undercover police officers who were

actively investigating the Short North Posse, a violent gang near Columbus, Ohio.

The officers testified at the criminal trial.  During trial, the City of Columbus

disclosed to defense counsel the officers' personnel and pre-employment files,

which included addresses and phone numbers of the officers and their families,

banking information, social security numbers, polygraph information, and driver's

licenses.  *Kallstrom*, 136 F.3d at 1059.  The Sixth Circuit acknowledged that there

is generally no constitutional right to nondisclosure of personal information, but in

light of the gang's propensity for violence and intimidation, the Sixth Circuit also

6

recognized that because disclosing the officers' personal information "may fall into the hands of persons likely to seek revenge upon the officers for their involvement in the [criminal] case, the City created a very real threat to the officers' and their family members' personal security and bodily integrity, and possibly their lives." *Id*. at 1063.  Consequently, the Sixth Circuit held "that the officers' privacy interests do indeed implicate a fundamental liberty interest, specifically their interest in preserving their lives and the lives of their family members, as well as preserving their personal security and bodily integrity."  *Id*. at 1062.

Here, in contrast to the "very real threat" in *Kallstrom* posed by a violent gang against the undercover officers who investigated and testified against them, Plaintiffs cite to statistics about the risks to transgender individuals in general, and allege hypothetical risks of assault and isolated incidents.  (R. 1, Complaint, ¶¶ 93-103).  Furthermore, the disclosure in *Kallstrom* was made directly by the City, without the officers' consent.  Here, on the contrary, Plaintiffs voluntarily sought and obtained their driver's licenses, and it is undisputed that the disclosure of their driver's licenses has been made by Plaintiffs themselves, as opposed to an involuntary disclosure made directly by the Secretary of State.  Although Plaintiffs argue that they repeatedly have to show their driver's license or state ID card (R.1, Complaint, ¶ 36), the question of *who* discloses the information is critical to the analysis.  In short, *Kallstrom* was a narrow and rare exception to the general rule

that disclosure of personal information does not implicate a fundamental liberty interest.  That narrow and rare exception does not apply here.

Turning to the second circumstance that could support an informational-privacy claim, in *Bloch*, 156 F.3d at 676, the plaintiffs were a rape victim (Ms. Bloch) and her husband who sued the Medina County Sheriff because the Sheriff held "a press conference to release the confidential and highly personal details of Ms. Bloch's rape by an unknown assailant."  As with *Kallstrom*, the disclosure was made directly by the defendant and without the plaintiffs' consent.  After significant analysis of *DeSanti* and other privacy cases, the Sixth Circuit "conclude[d] that a rape victim has a fundamental right of privacy in preventing government officials from gratuitously and unnecessarily releasing the intimate details of the rape where no penological purpose is being served."  *Bloch*, 156 F.3d at 686.  And because the Sixth Circuit broke new legal ground, it further concluded that the Sheriff was entitled to qualified immunity on the privacy claim.  *Id*. at 686-87.[2]  As with *Kallstrom*, *Bloch* was a narrowly tailored and rare exception to the general rule under *DeSanti*, 653 F.2d at 1090, that "the Constitution does not encompass a general right to nondisclosure of private information."

---

[2] In this case, Ruth Johnson is sued in her official capacity only, so qualified immunity in inapplicable.  *United Pet Supply, Inc. v. City of Chattanooga, Tenn.*, 768 F.3d 464, 472 (6th Cir. 2014).  The point remains, however, that *Bloch* was a departure from established law.

In this case, Plaintiffs complain about having their biological sex—as opposed to the gender with which they identify—on their driver's licenses, which they claim has the potential to cause embarrassment when displayed to others. But this allegation does not remotely compare to a county sheriff publicly announcing confidential and highly personal information about a rape victim at a press conference. On the contrary, in *Lee v. Willey*, 2012 WL 4009629, 10 (E.D. Mich. 2012), Magistrate Judge Randon recommended denying an informational-privacy claim because neither the plaintiff nor the magistrate judge "found any case law holding that disclosure of Plaintiff's sexual orientation rises to the level of a breach of a right recognized as 'fundamental' under the Constitution." The Report and Recommendation was adopted by Judge Edmunds on September 12, 2012. (Dk. 102 in Case No. 2:10-cv-12625). Although sexual orientation is admittedly not the same as gender identity, *Lee* is clearly more analogous to the instant case than the egregious facts set forth in *Bloch*. And as to the three Plaintiffs who have identified themselves, their argument about nondisclosure is rather dubious, given that each of them has disclosed their name, photograph, and story for all to see.[3]

This Court should resist Plaintiffs' invitation to significantly broaden the two narrow exceptions discussed above, especially in light of the "need for

---

[3] For example, see article at:
http://www.mlive.com/news/detroit/index.ssf/2015/05/six_michigan_transgender_peopl.html.

9

restraint in administering the strong medicine of substantive due process….”

*Obergefell v. Hodges*, ___ U.S. ___, 2015 WL 2473451, *29, (June 26, 2015)

(Roberts, C.J., dissenting).  Because Plaintiffs have failed to assert a fundamental

liberty interest, they have failed to sufficiently plead a right-to-privacy claim under

the substantive protections of the Due Process Clause of Fourteenth Amendment.

“Only after a fundamental right is identified should the court proceed to the next

step of the analysis - - the balancing of the government’s interest in disseminating

the information against the individual’s interest in keeping the information

private.”  *Lambert*, 517 F.3d at 440.  Thus, Count 1 fails at the first step of the

analysis, and should therefore be dismissed for failure to state a claim.

Furthermore, for the reasons more fully discussed in the arguments

addressing Plaintiffs’ equal protection claims, *infra*, the government has a rational

interest in having an accurate sex designation on a driver’s license.  Plaintiffs’

claims thus fail both the first and second steps, and Count I fails as a matter of law.

**II.**     **Plaintiffs have failed to state a claim for violation of the First
Amendment based upon a theory of compelled speech.**

Plaintiffs allege that the “Drivers’ License Policy” (more accurately

described as the Driver’s License Manual) violates their First Amendment rights to

“refrain from speaking,” specifically by “forcing them” to disclose or identify their

transgender status.  (R. 1, Complaint, ¶ 115).  However, these allegations do not

conform to what the U.S. Supreme Court has actually held concerning compelled speech claims.

The U.S. Supreme Court summarized its compelled speech jurisprudence in *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47 (2006), in which the Court upheld a law that required law schools to provide equal access to military recruiters. There, the Supreme Court began by reviewing *West Virginia Board of Education v. Barnette*, 319 U.S. 624 (1943)(holding unconstitutional a requirement that schoolchildren recite the Pledge of Allegiance and salute the flag) and *Wooley v. Maynard*, 430 U.S. 705, 717 (1977)(holding unconstitutional a law requiring motorists to display the state motto), and noted that—unlike *Barnette* and *Wooley*—the statute at issue did not dictate the content of the speech, which was only "compelled" if, and to the extent, such speech was made on behalf of other recruiters. *Forum for Academic & Institutional Rights, Inc.* (*FAIR*), 547 U.S. at 61-62. The Supreme Court's opinion in *Wooley* rested heavily on its conclusion that a state's interest in disseminating an ideology could not outweigh an individual's right to avoid becoming a courier for that message. *Wooley*, 430 U.S. at 717. Similarly, in *Barnette*, the Supreme Court was adamantly opposed to forcing citizens to "confess by word or act their faith" in matters of opinion.

The Supreme Court in *FAIR* continued its review, noting that compelled statements of fact are also subject to First Amendment scrutiny, citing its opinion

11

in *Riley v. National Federation of the Blind of N.C., Inc.*, 487 U.S. 781, 797-798

(1988). *FAIR*, 547 U.S. 61-62. But in *Riley,* the Supreme Court's concern with

compelled factual disclosure was not in the disclosure itself, but with the burden

that it would place upon protected speech. *Riley*, 487 U.S. at 797-798.

Then, after reviewing regulations that compelled a speaker to host or

accommodate another private speaker's message (not applicable to Plaintiffs'

claims here), the Supreme Court turned to expressive conduct and its prior holding

in *United States v. O'Brien*, 391 U.S. 367 (1968). *FAIR*, 547 U.S. 63-65. In

*O'Brien,* the Court recognized that some forms of "symbolic speech" were

protected, but rejected the view that conduct could be labelled as "speech" anytime

the person engaging in it intended to express an idea. *FAIR*, 547 U.S. 65-66 (citing

*O'Brien*, 391 U.S. at 376). Perhaps significantly, the Supreme Court's opinion in

*O'Brien* referred to driver's licenses:

> A law prohibiting destruction of Selective Service certificates no more
> abridges free speech on its face than a motor vehicle law prohibiting
> the destruction of drivers' licenses.

*O'Brien*, 391 U.S. at 375.

None of these cases or principles apply to support the Plaintiffs' allegations

of compelled speech. There is no opinion being expressed in the display of sex on

their driver's license—only a simple statement of factual data. Even assuming that

the identification of their sex on the license was a "compelled statement of fact,"

there is no other protected expression in the license that is burdened by that disclosure, and so *Riley* is not applicable.

But more fundamentally, it is far from clear that there is any protected speech involved in driver's licenses at all. In *O'Brien*, the Supreme Court used the idea of protected expression in destroying licenses as an example through which to casually dismiss the idea that such an act was protected speech. It would be somewhat paradoxical for the outright destruction of a government ID to be unprotected expression, but to have the printing of factual information on that ID to somehow be an infringement of protected expression.

The Supreme Court has recently suggested that government ID's are generally not individual expression. In *Walker v. Texas Division, Sons of Confederate Veterans, Inc.*, __ U.S. __ , 2015 WL 2473375 (June 18, 2015), the Court noted that, "[L]icense plates are, essentially, government IDs. And issuers of ID 'typically do not permit' the placement on their IDs of 'message[s] with which they do not wish to be associated." *Walker* at *18 (citing *Pleasant Grove City v. Summum*, 555 U.S. 460, 471 (2009)). Also, the Supreme Court in *Walker* even suggested that identification information alone was not speech:

> First, the history of license plates shows that, **insofar as license plates have conveyed more than state names and vehicle identification numbers,** they long have communicated messages from the States.

13

*Walker* at *15-16.  [Emphasis added].  The information at issue in this case—a person's sex as displayed on their driver's license—is no different than a description of a vehicle's make and model on the vehicle's registration form. Any claim in Plaintiffs' complaint for a violation of the First Amendment premised upon a theory of compelled speech must fail as a matter of law.

### III.  Plaintiffs have failed to state a claim for a violation of the Equal Protection Clause.

Plaintiffs contend that Defendant Johnson violated the Fourteenth Amendment's Equal Protection Clause. The Equal Protection Clause provides that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Sixth Circuit has held that the Equal Protection Clause prohibits discrimination by government which burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.  *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 986 (6th Cir. 2012)(quoting *TriHealth, Inc. v. Board of Commissioners*, 430 F.3d 783, 788 (6th Cir. 2005)). The latter category has been referred to as the "class of one" theory.  *Bench Billboard*, 675 F.3d at 986 (citing *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 836 (6th Cir. 2009)).

As a threshold inquiry, Plaintiffs have failed to establish that they have been treated differently than similarly situated individuals.  An equal protection plaintiff

14

must first show that they were treated differently from others who were similarly situated. See *Mt. Elliott Cemetery Ass'n v. City of Troy*, 171 F.3d 398, 406 (6th Cir. 1999). "The threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers." *Scarborough v. Morgan County Board of Education*, 470 F.3d 250, 260 (6th Cir. 2006). To satisfy this threshold inquiry, Plaintiffs must allege that they and other individuals who were treated differently were "similarly situated in all material respects." *Bench Billboard*, 675 F.3d at 986 (quoting *Taylor Acquisitions*, 313 F. App'x at 836). In determining whether individuals are "similarly situated," a court should "not demand exact correlation, but should instead seek relevant similarity." *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000).

Plaintiffs have failed to meet this threshold inquiry. Plaintiffs' claims center on their objection to having to obtain a new birth certificate in order to change the sex displayed on their drivers' license. (R.1, Complaint, ¶39, 119). But there is no allegation that any other groups or individuals are permitted to change the sex characteristic on their drivers' licenses or state identification cards without obtaining a new birth certificate.

Instead, Plaintiffs seek to compare their sought-after change to changes made for entirely different characteristics such as height or eye color. (R.1,

15

Complaint, ¶119).  However, people seeking to change height and eye color are not

similarly situated in "all material respects" to individuals seeking to change their

sex, and there is no relevant similarity.  First, the most obvious distinction between

sex and height or eye color is that height and eye color are visible and external

characteristics that are readily observable without invasive verification.  In

contrast, the allegations in Plaintiffs' complaint essentially concede that their sex

cannot be readily discerned just by looking at them.  (See e.g. R.1, Complaint, ¶52,

60, 70, 72, 77, 85, 92).  To hold sex and height or eye color as a "similarly

situated" physical characteristic suggests either that the state is constitutionally

required to take applicants at their word about their sex, or requires branch office

workers to make judgments about a person's sex based only on their outward

appearance or conformity to stereotypical gender roles.

Second, neither height nor eye color affect how a person is searched or

housed after they are arrested.  When a person is arrested, police may assume that

the sex shown on the person's driver's license is an accurate physical description,

and then conduct physical searches and assign them to jail cells according to the

sex listed on the driver's license. Mich. Comp. Law 764.25a, 764.25b, 791.269a.

Having the identification documents reflect Plaintiffs' subjective gender self-

identification instead of anatomical fact may result in undesirable consequences,

ranging from unintentionally having an opposite-sex officer conduct a bodily search, to housing an individual in a cell with the opposite sex detainees.

Third, instead of changing height or eye color to reflect updated information, Plaintiffs seek to have an official state identification that describes their physical sex as being something other than it is.  None of the Plaintiffs allege that they have undergone sex reassignment surgery, and in fact E.L. and A.M. have alleged in the complaint that they have either no desire or no intention to do so.  (R.1, Complaint, ¶ 51, 56).  So, while they may very well identify with and live as one gender, they are still physically a sex other than their self-identified gender.

The Plaintiffs, then, are seeking to obtain official state identification documents that present what can only be described as false information.  A female person may live their life as a man, but they are still physically female.  And a male person might live in every respect as a woman, but still be physically male. The driver's license does not show "gender" on the front of the card, and instead the information provided is described as the "sex" of the driver.  (Exhibit B, Michigan Driver's License Sample).  In this respect, there must be some recognition of limitations on what drivers' licenses can accomplish.  A driver's license can only provide a physical description—it cannot describe who you are as a person.

There are fundamental and material differences between a person's sex and their height or eye color.  Plaintiffs are not similarly situated to people seeking to change their height or eye color on their licenses.  Accordingly, they have failed to show disparate treatment, and their equal protection claims must fail.  But even if they could overcome this threshold inquiry, their claims would nonetheless fail for other reasons as set forth below.

### A.    Plaintiffs have not alleged an equal protection burden on a fundamental right.

Here, the minimal allegations of Count 3 in Plaintiffs' complaint do not allege a burden on a fundamental right.  Even if this Court were to generously construe this claim to incorporate the rights discussed in the other counts of the complaint—without any actual reference to those claims—such coalescence would mean only that the claims must necessarily rise and fall together.  *Thayer v. Chiczewski,* 697 F.3d 514, 532 (7th Cir. 2012).  For the reasons argued elsewhere in this brief, Plaintiffs' other claims are legally flawed and subject to dismissal as well.  Consequently, any equal protection claim based upon those alleged violations fares no better.

### B.    Plaintiffs have not alleged membership in a recognized suspect or quasi-suspect class.

Plaintiffs have also not alleged that they are members of a suspect class. Plaintiffs in equal protection cases generally allege that they have been arbitrarily

classified as members of an "identifiable group." *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601 (2008)(quoting *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979)).  As the Supreme Court noted in *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 60 (1973), "There is hardly a law on the books that does not affect some people differently from others.  But the basic concern of the Equal Protection Clause is with state legislation whose purpose or effect is to create discrete and objectively identifiable classes."  When the identifiable group has been recognized as a suspect or quasi-suspect class, courts examine the classification under a heightened level of scrutiny. See e.g. *Davis v. Prison Health Services*., 679 F.3d 433, 441 (6th Cir. 2012).  But, when the identifiable group has not been recognized as a suspect or quasi-suspect class, courts examine the classification under rational basis review. *Davis,* 679 F.3d at 441 (citing *Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307 (1976) (discrimination based on age)).

In this case, Plaintiffs' equal protection claim is premised upon their self-identification as transgender individuals.  But Plaintiffs have failed to identify any legal authority from this circuit establishing that transgender is a suspect or quasi-suspect class.  Numerous other courts that have considered allegations of discrimination by transgender individuals have found that it was not a suspect class. In *Braninburg v. Coalinga State Hosp*., No. 1:08-cv-01457-MHM, 2012

U.S. Dist. LEXIS 127769, 2012 WL 3911910, at *8 (E.D. Cal. Sept. 7, 2012), the

Court held that, "it is not apparent that transgender individuals constitute a

'suspect' class".  And in *Jamison v. Davue*, No. S-11-cv-2056 WBS, 2012 U.S.

Dist. LEXIS 40266, 2012 WL 996383, at *3 (E.D. Cal. Mar. 23, 2012), the Court

concluded that, "transgender individuals do not constitute a 'suspect' class, so

allegations that defendants discriminated against him based on his transgender

status are subject to a mere rational basis review."

Further, in *Kaeo-Tomaselli v. Butts*, No. 11-cv-00670 LEK, 2013 U.S. Dist.

LEXIS 13280, 2013 WL 399184, at *5 (D. Haw. Jan. 31, 2013), the Court noted

that the plaintiff's status as a transgender female did not qualify her as a member of

a protected class and explaining the court could find no "cases in which

transgendered individuals constitute a "suspect' class." The Court in *Lopez v. City

of New York*, No. 05-cv-10321-NRB, 2009 U.S. Dist. LEXIS 7645, 2009 WL

229956, *13 (S.D. N.Y. Jan. 30, 2009) explained that because transgender

individuals are not a protected class for the purpose of Fourteenth Amendment

analysis, claims that a plaintiff was subjected to discrimination based on her status

as transgender are subject to rational basis review. Finally, the Court in *Johnston v.

Univ. of Pittsburgh of the Commonwealth Sys. of Higher Educ.*, 2015 U.S. Dist.

LEXIS 41823, *22-23 (W.D. Pa. Mar. 31, 2015) held that because neither the

Supreme Court nor the Third Circuit had recognized transgender as a suspect

classification, plaintiff's claims were reviewed under rational basis standard. Consequently, an equal protection claim based upon transgender status is subject to rational basis review.

Moreover, the proposed classification—i.e. transgender—is not a classification that the Defendant has in any way imposed upon Plaintiffs and is not expressed in any state statute or policy.  The "Drivers' License Policy" identified in the complaint (properly titled the Drivers' License Manual) does not define the term "transgender," does not identify criteria for categorizing a person as "transgender," and does not establish any standards applicable only to transgender persons.  In fact, the Manual does not even use the term.  Rather, as alleged in the complaint, the Drivers' License Manual provides only that "an applicant" seeking to change the sex characteristic on their license must supply a certified birth certificate showing the sex of the applicant.  (Exhibit B, Driver's License Manual, Section I, p 3).  The requirement for a birth certificate, then, is not based on a person's membership or identification in any particular group, but is instead triggered by an individual's request for the state to take a particular action.

**C.    Plaintiffs have not met the criteria for a "class of one" equal protection claim.**

In "class-of-one" claims, "the plaintiff [does] not allege membership in a class or group" but rather simply "alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the

difference in treatment." *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th

Cir. 2012)(quoting *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000)).

It is not at all clear that Plaintiffs even seek to raise a "class of one" claim.

Indeed, it seems apparent that they are claiming to be members of a "transgender"

class or group, which is contrary to a "class-of-one" theory.  Nonetheless, as

discussed above, Plaintiffs have not shown that they were treated differently from

others who were similarly situated.  So, even if Plaintiffs sought to raise a "class-

of-one claim," they have failed to meet the legal requirements described in *Davis*,

and have also failed to state a "class-of-one" equal protection claim. *Davis,* 679

F.3d at 441.

### D.    The Department of State's procedure for changing sex on a driver's license satisfies rational basis review.

Finally, even if Plaintiffs had stated a claim as a non-suspect class or "class-

of-one," those claims would be subject to review under the rational basis standard.

The standard for rational basis review was succinctly summarized in the Sixth

Circuit's opinion in *Johnson v. Bredesen*, 624 F.3d 742 (6th Cir. 2010):

> To survive rational basis scrutiny, the statute need only be "rationally related to legitimate government interests," and "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." "[E]very reasonable construction must be resorted to, in order to save a statute from unconstitutionality." Where rational basis review governs, we will not strike down a statute on equal protection grounds "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of

legitimate purposes that we can only conclude that the legislature's
actions were irrational." "A 'plaintiff may demonstrate that the
government action lacks a rational basis . . . either by negating every
conceivable basis which might support the government action, or by
demonstrating that the challenged government action was motivated
by animus or ill-will.'"

*Johnson*, 624 F.3d at 746-47 (internal citations omitted).

Here, there is a legitimate government interest in maintaining accurate state

identification documents.  In *Whitlow v. Hodges*, 539 F.2d 582 (6th Cir. 1976), the

Sixth Circuit followed the U.S. Supreme Court's summary affirmance in *Forbush*

*v. Wallace*, 405 U.S. 970, 92 S. Ct. 1197 (1972), which upheld an Alabama District

Court opinion finding a "significant state interest" in "maintaining a close watch

over its licensees," and that the state's interest included the maintenance of driving

records and identification purposes "traffic related or otherwise."  *Forbush v.*

*Wallace,* 341 F. Supp. 217, 221-222 (M.D. Ala. 1971)(concerning a state law

requiring drivers' licenses to be issued in the driver's legal name).  Also, the state

has a legitimate government interest in keeping accurate records to promote

effective law enforcement.  See *Dean v. United States¸* 436 F. Supp. 2d 485, 488

(E.D. N.Y. 2006)(citing *United States v. Schnitzer,* 526 F.2d 536, 539 (2nd Cir.

1977)).

The requirement that persons supply a birth certificate in order to change the

sex shown on their identification is rationally related to the government interest in

maintaining accurate records to promote effective law enforcement.  The

23

production of a birth certificate ensures that the information on the license is consistent with other state records describing the individual and is evidence that the requested change accurately describes the person's sex. A driver's license reflecting one sex and a birth certificate reflecting another would result in conflicting information that could create uncertainty and inconsistency.

Also, as discussed earlier, the identification of sex on the drivers' licenses is only a description of the person's physical body, not their gender identity or their subjective self-identification. Defendant Johnson may rationally conclude that a birth certificate is appropriate documentation of a change in sex that furthers the State's interest in accurate licensee information for purposes of effective law enforcement.

## IV. Michigan's driver's license policy does not violate Plaintiffs' right to interstate travel.

Plaintiffs argue that Michigan's Driver's License Policy violates their right to interstate travel. As discussed below, there is no merit to this claim.

"The word 'travel' is not found in the text of the Constitution. Yet the 'constitutional right to travel from one State to another' is firmly embedded in [Supreme Court] jurisprudence." *Saenz v. Roe*, 526 U.S. 489, 498 (1999)(internal citation omitted). The "right to travel" has three main components:

> [1] It protects the right of a citizen of one State to enter and to leave another State, [2] the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State,

24

and, [3] for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State.

*Id*. at 500.

Plaintiffs appear to be primarily concerned with the third component, asserting that the Constitution offers protection to "citizens who choose to become permanent residents of a new state by requiring the new state to treat the new residents the same as existing residents of the state." (R. 1, Complaint, ¶ 124). The third component—equal treatment—can be traced back to the Slaughter–House Cases. *Saenz*, 526 U.S. at 503. There is, however, a dearth of Sixth Circuit case law directly on this subject.

In *Hayes v. Board of Regents of Kentucky State University*, 495 F.2d 1326 (6th Cir. 1974), the issue was whether a person who moved to a different state may be required to pay out-of-state (*i.e.*, higher) tuition even though the person registered to vote in the new state. Residents and nonresidents were clearly treated differently, so one of the legal theories raised in *Hayes* was the right to interstate travel. The plaintiff argued "that a requirement of an intention to remain permanently unconstitutionally penalizes the right to travel," but the Sixth Circuit rejected the interstate-travel claim. *Hayes*, 495 F.2d at 1328.

Interstate travel—alternatively, the right to travel—was also raised in the same-sex marriage cases, based on a state's refusal to recognize a marriage from another state. In *DeBoer v. Snyder*, 772 F.3d 388, 420 (6th Cir. 2014), the Sixth

25

Circuit rejected the plaintiffs' right-to-travel claim because "the law does not punish out-of-state new residents in relation to its own born and bred. Nonresidents are 'treated' just 'like other citizens of that State'…."  Although *DeBoer* was later overruled in *Obergefell, supra*, the Supreme Court's decision was based on principles that had nothing to do with the right to travel, and there is nothing in *Obergefell* that questions the right-to-travel analysis in *DeBoer*. Instead, the broad ruling in favor of same-sex marriage made the interstate-recognition issue moot.

The main flaw in Plaintiffs' interstate-travel claim is that it is directed at the differences among the various state laws pertaining to birth certificates, as set forth in paragraphs 126 through 128 of the complaint.  Although Plaintiffs' lawsuit is framed as a challenge to "Michigan's Driver's License Policy," Count 4 is directed primarily at the burdensomeness of changing sex or gender on birth certificates. But Michigan's Driver's License Manual treats all Michiganders alike, regardless of whether they were born in Michigan or elsewhere.  The same documentation— *i.e.*, a birth certificate—is required for everyone.  It is irrelevant that some states have different requirements for changing the sex designation on birth certificates.

Finally, Plaintiffs' interstate-travel claim contradicts the central theme of their lawsuit, which is that they should not have to present a birth certificate—from *any* state—to change the sex designation on their Michigan driver's licenses.  In

26

Michigan, the requirement for requesting a new birth certificate to show a sex designation other than that designated at birth is addressed in the Public Health Code, Mich. Comp. Laws § 333.2831(c).  Plaintiffs do not challenge that law, but instead challenge Michigan's equally-applied Driver's License Manual.  In sum, Plaintiffs have failed to state an interstate-travel claim.

## V.   Michigan's Driver's License Policy does not violate Plaintiffs' liberty interest in refusing unwanted medical treatment.

The fifth and final count is brought by Plaintiffs Love and A.M. only.  (R.1, Complaint, ¶ 131).  Plaintiffs claim that the Driver's License Manual violates their liberty interest in refusing unwanted medical treatment.  As discussed below, this claim is without merit.

As with Count 1, Count 5 is based on the substantive protections under the Due Process Clause of the Fourteenth Amendment.  Accordingly, a general overview of substantive due process will not be repeated here.  It is true, as alleged by Plaintiffs, that they have a liberty interest in refusing unwanted medical treatment.  *Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261 (1990).  When medical treatment is imposed by a state, the question of "whether [a person's] constitutional rights have been violated must be determined by balancing his liberty interests against the relevant state interests."  *Id*. at 279.  But no balancing of interests is required here, because no medical treatment is being forced upon Plaintiffs.

Here, the Secretary of State has not required Plaintiffs to undergo unwanted medical treatment—*i.e.*, what Plaintiffs describe as "gender confirmation surgery." Nothing in the Driver's License Manual directly requires Plaintiffs to have surgery. Rather, the Public Health Code, Mich. Comp. Laws § 333.2831(c) requires "an affidavit of a physician certifying that sex-reassignment surgery has been performed," in order to obtain a new birth certificate.  Plaintiffs admit that they are not being forced to undergo involuntary medical treatment, but allege that they have to "choose" between unwanted medical treatment and obtaining a driver's license or state ID card.  (R. 1, Complaint, ¶ 134).  Plaintiffs' theory is unsupported by the law.

In *U.S. Citizens Ass'n v. Sebelius*, 705 F.3d 588, 601 (6th Cir., 2013), the plaintiffs challenged the individual mandate provision of the Patient Protection and Affordable Care Act, arguing that the law violated their right to liberty under the Due Process Clause because "[t]he individual mandate places a coercive burden on the exercise of the right to refuse unwanted medical care…."  The Sixth Circuit rejected plaintiffs' claim, concluding that the "individual mandate does not implicate the fundamental liberty right of [plaintiffs] to refuse unwanted medical care."  *Id*.  In other words, a person's liberty interest in refusing medical care is not violated merely because the challenged law encompasses medical care.

By claiming that the Driver's License Manual indirectly implicates their right to refuse medical treatment, Plaintiffs again are inviting this Court to vastly expand the substantive protections of the Due Process Clause.  And again, the Supreme Court has expressly cautioned against expanding substantive due process protections, especially in novel situations such as this one.  *Glucksberg, supra*; and *Osborne, supra*.  In short, Count 5 should be dismissed for failure to state a claim.

## CONCLUSION AND RELIEF REQUESTED

For the reasons stated above, Plaintiffs have failed to state claims for which relief may be granted, and Defendant Secretary of State Ruth Johnson respectfully requests that this Honorable Court enter an Order dismissing Plaintiffs' complaint against her in its entirety and with prejudice, together with any other relief the Court determines to be appropriate under the circumstances.

Respectfully submitted,

BILL SCHUETTE
Attorney General

*s/Erik A. Grill*
Erik A. Grill (P64713)
Kevin Himebaugh (P53374)
Jeanmarie Miller (P44446)
Denise C. Barton (P41535)
James E. Long (P53251)
Assistant Attorneys General
Attorneys for Defendant
P. O. Box 30736
Lansing, Michigan  48909
(517) 373-6434
grille@michigan.gov

Dated:  July 16, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2015, I electronically filed the foregoing

paper with the Clerk of the Court using the ECF system which will send

notification of such filing of the foregoing document as well as via U.S. Mail to all

non-ECF participants.

> */s/Erik A. Grill*
> Erik A. Grill
> Assistant Attorney General
> Attorneys for Defendant
> Civil Litigation, Employment & Elections
> Division
> P.O. Box 30736
> Lansing, Michigan  48909
> (517) 373-6434
> grille@michigan.gov
> P64713