UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| EMANI LOVE, *et al.*, | NO. 2:15-cv-11834 |
| Plaintiffs, | HON. NANCY EDMUNDS |
| v | MAG. ELIZABETH A. STAFFORD |
| RUTH JOHNSON, | |
| Defendant. | |

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES  UNION FUND OF MICHIGAN<br>Jay D. Kaplan (P38197)<br>Daniel S. Korobkin (P72842)<br>Michael J. Steinberg (P43085)<br>Attorneys for Plaintiffs<br>2966 Woodward Avenue<br>Detroit, MI  48201<br>(313) 578-6812 | Erik A. Grill (P64713)<br>Kevin R. Himebaugh (P53374)<br>Jeanmarie Miller (P44446)<br>Denise Barton (P41535)<br>James E. Long (P53251)<br>Assistant Attorneys General<br>Attorneys for Defendant Johnson<br>Michigan Department of Attorney General<br>Civil Litigation, Employment &  Elections Division<br>P.O. Box 30736<br>Lansing, MI  48909<br>(517) 373-6434 |
| AMERICAN CIVIL LIBERTIES  UNION FOUNDATION<br>John A. Knight<br>Attorney for Plaintiffs<br>180 North Michigan Avenue, Suite 2300<br>Chicago, IL  60606<br>(312) 201-9740 | |
| PROSKAUER ROSE LLP<br>Steven R. Gilford<br>Michael F. Derksen<br>Jacki L. Anderson<br>Attorneys for Plaintiffs<br>70 West Madison, Suite 3800<br>Chicago, IL  60602<br>(312) 962-3550 | |

/

# DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS

### A. "Sex" is not interchangeable with "gender."

Plaintiffs contend that Defendant's distinction between "sex" and "gender," with "sex" being primarily physical and "gender" being more closely associated with a person's identity or expression, is contrary to "medical and scientific consensus." (R. 26, Response, Pg ID# 214). But this distinction between sex and gender is not Defendant's own invention. Rather, the distinction comes from a case involving a transgender person, where the court makes the distinction between the two terms in quoting a 2011 publication of the American Psychological Association. *Shaw v. District of Columbia*, 944 F.Supp.2d 43, 48, fn. 2, 3 (D.D.C., 2013). Accordingly, the distinction that Defendant has made is supported by case law. Plaintiffs have failed to cite to or identify their sources, case law or otherwise, for the supposed consensus.

Regardless, Plaintiffs' use of these terms interchangeably causes confusion and muddles the issues before this Court. If only for purposes of this lawsuit, there must be a baseline vocabulary that distinguishes between an individual's physical sexual anatomy and the person's gender identity or gender expression. Otherwise, if both "sex" and "gender" are subject to self-identification, any designation of "male" or

1

"female" is ultimately nothing more than an individual's subjective self-concept. Indeed, in their Response, Plaintiffs contend that the most important factor in determining a person's "sex" is their gender identity. (R. 25, Pg ID# 214). Plaintiffs fail to provide any legal or scientific authority to support this contention.

To prevent the parties from becoming mired in pedantic disputes over which definition is more precise or apt, Defendant suggests that this Court adopt the *Shaw* and the American Psychological Association's definitions of "sex" and "gender."

> **B. Plaintiffs have failed to plead a violation of any limited right to informational privacy under the substantive due process protections of the Fourteenth Amendment.**

When analyzing the right-to-privacy protections of substantive due process, the starting point is that "the Constitution does not encompass a general right to nondisclosure of private information." *J.P. v. Desanti*, 653 F.2d 1080, 1090 (6th Cir. 1981). Plaintiffs fail to mention *Desanti* in their response and instead focus on two narrow limited exceptions to this general rule: *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998) and *Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998).

As discussed in Defendant's brief to dismiss, the narrow and fact-specific exceptions presented in *Kallstrom* and *Bloch* do not support Plaintiffs' argument that substantive due process should be extended to provide them a right to privacy regarding the sex designation on their driver's licenses. A Michigan driver's license or state issued identification card merely states an operator's anatomical sex, not his or her gender or gender identity.

In support of their position that disclosure of the "wrong" sex on their driver's license violates their right to privacy, Plaintiffs cite to *K.L. v. State, Dep't of Admin., Div. of Motor Vehicles*, No. 3AN-11-05431-CI, 2012 WL 2685183 (Alaska Super. Ct. Mar. 12, 2012). But *K.L.* is inapposite for two main reasons.

First, the right to privacy in *K.L.* was based on the Alaska Constitution, not the United States Constitution. "Unlike the federal Constitution, Alaska's constitution provides an explicit right to privacy." *K.L.*, 2012 WL 2685183 at *4. State law can confer greater rights than federal law. "Because this right to privacy is explicit, its protections are necessarily more robust and 'broader in scope' than those of the implied federal right to privacy." *Id*. The court concluded

3

that disclosure of the driver's license "implicates *non-fundamental* aspects of the right to privacy." *Id*. at *8 (emphasis added). In contrast, Plaintiffs here argue that they have a fundamental right to privacy under the U.S. Constitution. Thus, Plaintiffs' reliance on *K.L.* is misplaced.

Second, the court's decision in *K.L.* is based, in part, on the fact that the Alaska DMV provided no procedure for changing the sex designation on a person's driver's license. Previously, the Alaska DMV, like Michigan, required "a medical certification of a sex change…before the DMV would change the sex code on an individual's license." *K.L.*, 2012 WL 2685183 at *1. But the parties agreed that the regulation was "not promulgated in accordance with the APA, and is therefore invalid." *Id*. at *3. Accordingly, "because the DMV now has no procedure for changing the sex designation on a driver's license, the issue before this Court is whether the absence of any procedure for changing the sex designation on an individual's license impermissibly infringes on the privacy rights of license holders…." *Id*. Nothing in *K.L.* calls into question the legality of requiring proof of a sex change. The court simply ordered the Alaska DMV to adopt a regulation in accordance

4

with the APA. *Id.* at *8. If anything, *K.L.* actually supports Defendant's position that requiring proof of a sex change is lawful. Accordingly, Plaintiff's right-to-privacy claim should be dismissed.

### C. Plaintiffs' arguments on the application of the First Amendment are legally incorrect and must be rejected.

Defendant's brief cited extensively to the Supreme Court's decision in *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47 (2006), which itself provided a thorough review of Supreme Court jurisprudence on compelled speech in matters of both opinion and fact. (R. 16, Pg ID# 92-94). Plaintiffs' response conflates compelled statements of fact and opinion, and fails to acknowledge the nuances between how those different subjects have been treated by the Supreme Court.

Plaintiffs erroneously argue that *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 63 S. Ct. 1178, 87 L. Ed. 1628 (1943) and *Wooley v. Maynard*, 430 U.S. 705, 717 (1977) apply to compelled statements of fact under *Riley v. National Federation of the Blind of N.C., Inc.*, 487 U.S. 781, 797-798 (1988). But Plaintiffs failed to acknowledge that *Barnette* and *Wooley*, which involved disputes over

5

the Pledge of Allegiance and mandatory display of a state motto, involved matters of compelled statements of opinion or ideology. *Barnette,* 319 U.S. at 642; *Wooley*, 430 U.S. at 717. In contrast, the Supreme Court in *Riley* expressly based its decision upon its concern over the burden that compelled statements of fact, as opposed to opinion or ideology, placed on other protected expression. *Riley*, 487 U.S. at 797-798. Because Plaintiffs ignore this critical distinction, their arguments are intrinsically and incurably flawed.

Notably, the Plaintiffs appear unwilling to definitively state whether their claim is based upon a theory of compelled statement of fact or compelled statement of opinion. Consequently, it remains unclear how they believe their claim should be analyzed. Thus, Plaintiffs fail to take a position on one of the central issues in this case – whether Plaintiffs' sex is a matter of fact, or opinion.

Regardless, Plaintiffs' claims fail either way. As a compelled statement of fact, Plaintiffs fail to establish that having their sex designated on their driver's license burdens protected speech. In support of their claim that the expression of their gender identity is protected speech, Plaintiffs cite to two state court opinions from outside

6

the Sixth Circuit. *Doe v. Yunits*, 2001 Mass. Super. LEXIS 327 (2001) and *Doe v. Bell*, 754 N.Y.S.2d 846 (Sup. Ct. NY, 2003). In *Yunits*, the Massachusetts Superior Court made no determination about whether a transgender student's decision to wear female clothes was not protected speech, and instead the two claims premised upon "freedom of expression" were dismissed *with the agreement of the plaintiff*. *Yunits*, 2001 Mass. Super. LEXIS 327, 10-11. Similarly, *Bell* was not based upon protected expression, and instead was a claim for accommodation under New York's disability discrimination statute. *Bell*, 754 N.Y.S.2d at 850. Consequently, neither case supports Plaintiffs' claims.

Likewise, if Plaintiffs assert a theory of compelled opinion, their claim fails because there is no opinion being expressed about the validity or merits of their gender identity. There is no statement of ideology or creed, simply a designation of "M" or "F," which is no more a statement of opinion than the recitation of Plaintiff's' height, eye color, or age.

Significantly, Plaintiffs make no effort to reconcile their claims with *United States v. O'Brien*, 391 U.S. 367, 375 (1968), in which the Supreme Court noted that the prohibition against destruction of draft

7

cards, "no more abridges free speech on its face than a motor vehicle law prohibiting the destruction of drivers' licenses…." Plaintiffs also offer no explanation for how their claims comport with *Walker v. Texas Division, Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2242 (2015), where the Supreme Court noted that, "issuers of ID 'typically do not permit' the placement on their IDs of 'message[s] with which they do not wish to be associated." (internal citations omitted).  In other words, if the Plaintiffs' gender identity is indeed a matter of opinion, then it follows that the State is not required to print the Plaintiffs' contrary opinion on a state-issued ID.

### D. Plaintiffs fail to state a valid Equal Protection claim because they do not show that they are treated differently on the basis of their sex.

Plaintiffs' principal argument is that Defendant's policy on changing one's sex designation "classifies based on sex." (R. 26, Pg ID# 230).  According to Plaintiffs, Defendant's policy "denies only transgender persons the right to an accurate license." (R. 26, Pg ID# 231).  Plaintiff's argument, however, misapplies both the Defendant's policy and prevailing law.

8

Plaintiffs fail to satisfy the threshold requirement of an Equal Protection claim that they are treated differently from those who are similarly situated. *Scarbrough v. Morgan County Board of Education*, 470 F.3d 250, 260 (6th Cir. 2006). Plaintiffs do not allege that only males are permitted to change their sex to female on their driver's license, or vice versa. The Secretary of State's policy, which logically flows from a Michigan statute, on its face, makes no classification based upon sex or gender. There is simply no disparate treatment in requiring an updated birth certificate before changing the sex designation on a driver's license. Defendant simply requires that a person's sex designation conform to an official state record—a birth certificate. Plaintiffs fail to establish that this requirement, generally applicable to all persons equally, singles them out for disparate treatment.

Finally, Defendant's driver's license policy withstands rational basis review. *Johnson v. Bredesen*, 624 F.3d 742, 746-47 (6th Cir. 2010). There are legitimate state interests in an official state identification that reflects a person's sex in conformity with their physical anatomy. Plaintiffs' arguments focus on the varied standards

9

that other states require to change a birth certificate, which may result in some people in Michigan obtaining a revised birth certificate without a change to their anatomy.  According to Plaintiffs, this potential for inaccurate information on a Michigan driver's license nullifies Defendant's interest in accurate records.

But the fit between the government's legitimate interests and the means chosen to accomplish those interests need not be perfect, just rational.  See e.g. *Breck v. Michigan*, 47 F. Supp. 2d 880, 887 (E.D. Mich. 1999).  The identification of drivers based on their anatomical sex is rationally related to the governmental interests in maintaining accurate identification records and based on public safety concerns.  State law expressly requires that a driver's license include a person's "sex."  Mich. Comp. Laws § 257.310(2)(b).  Birth certificates are considered "vital records" by law, and include a designation of sex at birth.  Mich. Comp. Laws § 333.2805(3), Mich. Comp. Laws § 333.2831(c).  Defendant may rationally conclude, therefore, that a birth certificate is the most accurate means of determining a person's sex.

Moreover, there are a multitude of public safety concerns that support the government's interest in having reliable information about

10

a person's biological sex. For example, upon arrest, a transgender person who has not undergone reassignment surgery could be exposed to harm if detained or imprisoned with members of the opposite sex. Also, as a result of a catastrophic event, such as a serious auto accident, a destructive fire, flood, etc., it may be necessary to identify a body based upon anatomical indicators, such as bone structure. Inconsistent records could increase the chances of misidentification.

Plaintiffs may dispute the effectiveness of Defendant's policy or the balance of interests inherent in it, but Plaintiffs cannot seriously dispute that the government's interests are legitimate and that the challenged policy is rationally related to accomplishing those interests. The policy thus passes rational basis review, and Plaintiffs' Equal Protection claim must fail.

### E. Plaintiffs have failed to plead a violation of the right to interstate travel.

The component of the right to travel at issue here is "for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State." *Saenz v. Roe*, 526 U.S. 489, 500 (1999). Plaintiffs' claim is without merit.

First, on the specific facts alleged by Plaintiffs, there is no actual discrimination between Michigan-born residents and Michigan residents who were born elsewhere. Plaintiffs' right-to-travel claim is based on the alleged distinction between "those who were born in Michigan and those who were not." (R. 1, Complaint, ¶ 125, Pg ID# 37). But this distinction is illusory because Defendant's policy to require a birth certificate to change a person's sex designation on their Michigan driver's license, applies equally whether the birth certificate was issued by Michigan or some other state. Michigan-born and non-Michigan-born Plaintiffs are treated exactly the same.

Second, the case law cited in Plaintiffs' response brief does not support their right-to-travel claim. Plaintiffs rely solely on two cases: *Saenz, supra* and *Attorney Gen. of New York v. Soto-Lopez*, 476 U.S. 898 (1986). (R. 26, Response, Pg ID# 232-34).

*Saenz* involved deliberate and direct discrimination against new California residents. For one year, new residents of California received welfare benefits in the amount that they received from their former state when that amount was lower than what California would have been paid to long-term California residents. *Saenz*, 526 U.S. at 493.

12

The raison d'être of the challenged law was to treat new residents differently. Not so in this case. Here, Defendant has an equally-applied policy that provides an objective, consistent, and administrable method for changing the sex designation on a person's driver's license.

*Soto-Lopez* also involved direct, purposeful discrimination based solely on residency. New York granted civil service preferences only to military veterans who were residents of New York when they entered military service. *Soto-Lopez*, 476 U.S. at 900. New York offered several reasons for its deliberate discrimination, but the Supreme Court rejected them all. *Id*. at 909.

Unlike *Saenz* and *Soto-Lopez*, the purpose of the driver's license policy is not to discriminate against new residents, but rather to apply a uniform policy applicable to all of its residents with respect to changing the sex designation on a driver's license. Consequently, Plaintiffs' right-to-travel claim should be dismissed.

### F. Plaintiffs have failed to plead a claim of forced medical treatment.

Plaintiffs admit that they are not forced to undergo medical treatment, but instead argue that "Defendant's policy forces Plaintiffs to choose between an accurate license and an invasive medical

13

procedure." (R. 26, Response, Pg ID# 236). Plaintiffs' argument is flawed.

First, Plaintiffs already have an "accurate" license, which reflects their sex as set forth on their birth certificate. Plaintiffs have not sued to have the word "sex" changed to "gender" on the face of the driver's license.

Second, the requirement to have sex-reassignment surgery in order to change one's sex on a Michigan-issued driver's license is not imposed by Defendant's policy. The requirement comes from the Public Health Code, which requires the state registrar to establish a new certificate of birth when one of three conditions is met. Relevant here is the third condition: "A request that a new certificate be established to show a sex designation other than that designated at birth. The request shall be accompanied by an affidavit of a physician certifying that sex-reassignment surgery has been performed." Mich. Comp. Laws § 333.2831. None of the cases cited in Plaintiffs' response brief support the conclusion that this indirect connection could support a forced-medical-treatment claim.

## CONCLUSION AND RELIEF REQUESTED

For the reasons discussed above and in her brief to dismiss, Defendant requests that this Honorable Court grant her motion and dismiss this action with prejudice.

Respectfully submitted,

Bill Schuette
Attorney General


*/s/Erik A. Grill*
Erik A. Grill (P64713)
Kevin Himebaugh (P53374)
Jeanmarie Miller (P44446)
Denise C. Barton (P41535)
James E. Long (P53251)
Assistant Attorneys General
Attorneys for Defendant
Civil Litigation, Employment &
Elections Division
P. O. Box 30736
Lansing, Michigan  48909
(517) 373-6434
grille@michigan.gov

Dated:  September 16, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing of the foregoing document as well as via U.S. Mail to all non-ECF participants.

*/s/Erik A. Grill*
Erik A. Grill
Assistant Attorney General
Attorneys for Defendant
P.O. Box 30736
Lansing, Michigan  48909
(517) 373-6434
grille@michigan.gov
P64713