# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

EMANI LOVE, et al.,

     Plaintiffs,

vs.

Case No. 15-cv-11834

Hon. Nancy G. Edmunds

RUTH JOHNSON, in her official
capacity as the Secretary of State of
Michigan,

     Defendant.

_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
FOR JUDGMENT ON THE PLEADINGS ON GROUNDS OF MOOTNESS**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES..................................................................... iii

QUESTION PRESENTED ......................................................................vi

AUTHORITY FOR DENYING THE RELIEF SOUGHT .................................... vii

INTRODUCTION ................................................................................1

BACKGROUND AND FACTS ................................................................2

ARGUMENT ....................................................................................7

I.     Judgment on the pleadings is not appropriate because Defendant's motion is based on facts that are not in the pleadings...............................7

II.    Defendant has not met her heavy burden of proving that it is absolutely clear that the challenged conduct will not start up again..........8

     A.    There has been no legislative repeal of the challenged policy...........................................................................9

     B.    There is no evidence in the record to support Defendant's motion. .......................................................................10

     C.    Defendant's office has a history of changing the policy and reversing policy changes under political pressure. ............11

     D.    The timing of Defendant's motion weighs strongly against mootness. ...................................................................14

III.   The case is not moot because the new policy does not completely eradicate the harm caused by the challenged policy. ...............................17

CONCLUSION ...................................................................................21

# INDEX OF AUTHORITIES

## Cases

*Akers v. McGinnis*, 352 F.3d 1030 (6th Cir. 2003)....................................................10

*Albrecht v. Treon*, 617 F.3d 890 (6th Cir. 2010) ........................................................7

*Ammex, Inc. v. Cox*, 351 F.3d 697 (6th Cir. 2003) ....................................................17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2007) ......................................................................8

*Bell v. City of Boise*, 709 F.3d 890 (9th Cir. 2013) ..................................................10

*Brandywine, Inc. v. City of Richmond*, 359 F.3d 830 (6th Cir. 2004) ......................9

*Cam I, Inc. v. Louisville/Jefferson Cty. Metro. Gov't*, 460 F.3d 717 (6th Cir. 2006) ..............................................................................................................17, 18

*Carr v. Alta Verde Indus., Inc.*, 931 F.2d 1055 (5th Cir. 1991) ...............................9

*Chafin v. Chafin*, 133 S. Ct. 1017 (2013) ................................................................21

*Charles v. Daley*, 749 F.2d 452 (7th Cir. 1984) ......................................................11

*Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513 (6th Cir. 2001) ........1, 9

*DeJohn v. Temple Univ.*, 537 F.3d 301 (3d Cir. 2008)............................................14

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000)...........................................................................................9, 11, 14, 17

*Harrell v. The Florida Bar*, 608 F.3d 1241 (11th Cir. 2010) ............................11, 14

*Kentucky Right to Life, Inc. v. Terry*, 108 F.3d 637 (6th Cir. 1997) ........................9

*Knox v. Service Employees Int'l Union, Local 1000*, 132 S. Ct. 2277 (2012) ..........1

*Longstreth v. Maynard*, 961 F.2d 895 (10th Cir. 1992) ...........................................2

*Love v. Johnson*, __ F. Supp. 3d __ (E.D. Mich. 2015) ...........................................2

*Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494 (6th Cir. 2006) ...........................................................................8

*Moyle v. Cty. of Contra Costa,* No. C-05-02324 JCS, 2007 WL 4287315
(N.D. Cal. Dec. 5, 2007)................................................................15

*Ne. Fla. Chapter of Associated Gen. Contractors v. City of Jacksonville*,
508 U.S. 656 (1993)....................................................................17

*Newman v. Trott & Trott, P.C.*, 889 F. Supp. 2d 948 (E.D. Mich. 2012) ................7

*Rich v. Fla. Dep't of Corrs.*, 716 F.3d 525 (11th Cir. 2013) ...................................15

*Sefick v. Gardner*, 164 F.3d 370 (7th Cir. 1998) ....................................................10

*Sheeley v. MRI Radiology Network, P.A.*, 505 F.3d 1173 (11th Cir. 2007) ............15

*Vencor, Inc. v. Webb*, 33 F.3d 840 (7th Cir. 1994)...................................................9

*Wall v. Wade,* 714 F.3d 492 (4th Cir. 2013)..........................................................11

## Court Rules

Fed. R. Civ. P. 12(b)(6).........................................................................7, 8

Fed. R. Civ. P. 12(c)............................................................................1, 7

Fed. R. Civ. P. 12(d) ...............................................................................8

## Other Authorities

Jaime M. Grant et al., *Injustice at Every Turn: A Report of the National
Transgender Discrimination Survey*, National Center For Transgender
Equality And National Gay And Lesbian Task Force (2011) ................19, 20

Gary Glenn, *Rep. Scott Didn't Pull Transgender Statement Out of Thin Air;
ACLU Has Campaigned for Official IDs*, Flint Journal, Associated
Press (February 11, 2010)..............................................................5

Mike Householder, *Michigan Secretary of State Candidates Make Gender
an Issue? Gender Designation on Driver's License Discussed*,
Associated Press (February 13, 2010) ............................................4

Brian McVicar, *Michigan Lawmaker Says LGBT Guidelines Take Away
Parental Rights, 'Upsets' Student Privacy*, MLive, Mar. 22, 2016..............14

Dave Philipps, *North Carolina Limits Bathroom Use by Birth Gender*, N.Y. Times, Mar. 24, 2016............................................................................13

Brad Sears & Lee Badgett, *Beyond Stereotypes: Poverty in the LGBT Community* (Williams Institute June 2012).....................................................19

Michigan Department of Health and Human Services, Medicaid Provider Manual, Outpatient Therapy.........................................................................20

*Sec. Of State Race: Ruth Johnson Joins Rep. Paul Scott in Opposing Sex Change on Driver's Licenses* (Aug. 20, 2010)................................................4

## QUESTION PRESENTED

Should this Court grant Defendant's motion for judgment on the pleadings on grounds of mootness when:

(1) The motion is based solely on counsel's mere assertion in a brief that the relevant policy has changed;

(2) There has been no legislative repeal of the challenged policy, Defendant has submitted no evidence of the policy change or its permanence, and the history of the policy and timing of the policy change weigh against a finding that the old policy will not be resurrected; and

(3) The new policy does not completely eradicate the harm that gave rise to the instant lawsuit?

Plaintiffs' answer: No.

## AUTHORITY FOR DENYING THE RELIEF SOUGHT

*Akers v. McGinnis*, 352 F.3d 1030 (6th Cir. 2003)

*Cam I, Inc. v. Louisville/Jefferson Cty.*, 460 F.3d 717 (6th Cir. 2006)

*Charles v. Daley*, 749 F.2d 452 (7th Cir. 1984)

*Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513 (6th Cir. 2001)

*DeJohn v. Temple Univ.*, 537 F.3d 301 (3d Cir. 2008)

*Friends of the Earth, Inc. v. Laidlaw*, 528 U.S. 167 (2000)

*Harrell v. The Florida Bar*, 608 F.3d 1241 (11th Cir. 2010)

*Longstreth v. Maynard*, 961 F.2d 895 (10th Cir. 1992)

*Sheeley v. MRI Radiology Network, P.A.*, 505 F.3d 1173 (11th Cir. 2007)

*Wall v. Wade*, 714 F.3d 492 (4th Cir. 2013)

## INTRODUCTION

"The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit resumption of the challenged conduct as soon as the case is dismissed." *Knox v. Service Employees Int'l Union, Local 1000*, 132 S. Ct. 2277, 2287 (2012). In this case, the Secretary of State has a history going back more than a decade of making unilateral changes to the state ID policy at issue in this case, including reversing changes in quick succession and based on political pressure. Now, nearly a year into this litigation and less than one week before the Secretary's employees were scheduled to sit for depositions about the challenged policy, defense counsel have filed a motion seeking dismissal of this lawsuit on mootness grounds because, they assert, the relevant policy has changed yet again.

Under these circumstances, Defendant has not carried her "heavy burden" of "proving mootness." *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 531 (6th Cir. 2001). Defendant's motion, which seeks "judgment on the pleadings" under Fed. R. Civ. P. 12(c), is not accompanied by any evidence regarding the purported change in policy—such as what motivated it, whether it has been implemented, or whether it is permanent. Further, although the new policy described in Defendant's brief is unquestionably a step in the right direction, it does not fully eradicate the irrational and unjustified burdens imposed on

transgender persons' ability to obtain an accurate driver's license as a policy, such as the form used in many other states to prove transgender person's change of gender designation would likely have done. Instead, Defendant's new policy requires persons to undergo the burden of obtaining a passport that they may not want or need and that is entirely unavailable to legal residents who are not U.S. citizens. For these reasons, and as more fully set forth below, Defendant's motion should be denied.

## BACKGROUND AND FACTS

This lawsuit challenges the Michigan Secretary of State's policy for changing the gender on a driver's license or state ID, because its requirements make it unduly burdensome, or in some cases impossible, for transgender individuals to obtain a state ID that accurately reflects their gender. *Love v. Johnson*, __ F. Supp. 3d __ (E.D. Mich. 2015) (Dkt. # 36 at Pg ID 325). Under the policy in place when the complaint was filed, Defendant will not correct the gender designation on a license or state ID unless presented with an amended birth certificate showing the correct gender. (Compl. ¶ 3.) The statutory requirements for amending the gender on a birth certificate vary depending on the state that issued it, making it extremely difficult or impossible for many transgender people to correct the gender on their Michigan-issued driver's license or state ID, depending on the laws of the state in which they were born. Although the requirements for

amending a birth certificate in Michigan are statutory, the policy for correcting

gender on a driver's license or state ID is entirely within the discretion of

Defendant Ruth Johnson. (*Id*. ¶¶ 2-4, 38-41.)

Defendant now asserts that she has exercised her discretion to "update" her

policy. (Def.'s Mot. for J. on the Pleadings, Dkt. # 48, at Pg ID 459.) Although no

affidavit or any other form of evidence regarding this purported policy change was

placed in the record, Defendant's attorneys have stated in their brief that she has

"voluntarily abandoned" the policy that gave rise to this lawsuit, and will now

accept a U.S. passport, passport card, or court order to change the sex on a driver's

license or state ID. (*Id*. at Pg ID 460, 462.) "With this updated policy in place,"

Defendant argues, this case should be dismissed as moot. (*Id*. at 460.)

Defendant's purported policy "update" is but the latest in a long series of

changes her office has implemented to the policy being challenged in this case.

(Compl. ¶ 42.) Documents produced by Defendant during discovery show that

there have been at least seven changes to the relevant policy prior to policy change

that purportedly just took place. (*See* History of Changing Gender Procedure,

Exhibit 1 to Decl. of Jay Kaplan, Exhibit A hereto; Defendant's Answers to

Plaintiffs' First Set of Interrogatories, No. 6, Ex 2 to Kaplan Decl.) Significantly,

in at least one instance in 2005, the Secretary of State changed the policy to make

it easier to change the gender designation on a license or ID, only to reverse that

policy a few weeks later and reinstitute the older, more burdensome policy. (Kaplan Decl. Exhibit 2 at p. 3.)

Additionally, socially conservative activists and politicians have used the policy as a political weapon, placing intense political pressure on Republican candidates to adopt a more restrictive policy that prohibits gender changes on driver's licenses and state IDs. *See, e.g., Sec. of State race: Ruth Johnson joins Rep. Paul Scott in opposing sex change on driver's licenses* (Aug. 20, 2010), Exhibit 3 to Kaplan Decl. (noting that Gary Glenn said that "we're glad that Ruth Johnson has now joined Rep. Paul Scott in expressly stating her opposition to the Secretary of State policy of allowing men to falsely identify themselves as female on their state-issued driver's license, and vice versa,"); Mike Householder, *Michigan Secretary of State candidates make gender an issue? Gender designation on driver's license discussed*, Associated Press (February 13, 2010), Exhibit 4 to Kaplan Decl. (noting that Paul Scott's position that "people who have undergone gender change operations shouldn't be able to change their licenses to reflect their new identities" has drawn "praise by conservative activists"). In the 2010 primary election for Secretary of State, former Secretary of State Terri Lynn Land was criticized for the temporary 2005 policy change, and the Campaign for Michigan Families, run by now-Representative Gary Glenn, demanded to know then-candidate Ruth Johnson's position on the issue. *See* Exhibit 4 to Kaplan Decl.; *see*

*also* August 19-20, 2010 email exchange between the Campaign for Michigan Families and Ruth Johnson, Exhibit 5 to Kaplan Decl.) Johnson eventually responded that she did "not support allowing people to change their gender on their license as a result of surgery or lifestyle." (Kaplan Decl. Exhibit 5 at p. 3.) Less than three months after Johnson took office, she instituted the extremely restrictive 2011 policy requiring an amended birth certificate to change the gender on a driver's license or state ID. (Compl. ¶¶ 42-44.)

Prior to the commencement of this lawsuit, the ACLU spent years attempting to persuade Defendant to change her policy because it was harmful and unconstitutional, but Defendant refused. (*See* Kaplan Decl. at Group Exhibit 6) (letters exchanged between Secretary of State and ACLU in 2005.)  In 2004, after the Secretary of State's office instituted a surgery requirement for gender changes on licenses, the ACLU complained to Secretary Land's office about the change. In April 2005, the surgical standard was ended, only to be reinstated 18 days later.[1] (*See, e.g.,* Gary Glenn, *Rep. Scott didn't pull transgender statement out of thin air; ACLU has campaigned for official IDs*, Flint Journal (February 11, 2010), Exhibit

---

[1] Director of the Michigan Customer Services Administration, Michael Wartella, admitted in his deposition that the Land Administration ordered the change and stated that he was unaware of any other reason for the change.  Since Mr. Wartella's deposition occurred on March 31, 2016, his transcript is unavailable. However, Plaintiffs will submit the relevant deposition pages to support this statement as soon as the transcript is available.

7 to Kaplan Decl.; *see also* Exhibit 4 to Kaplan Decl.) In 2011, a new policy was put into place under Secretary Johnson that continued the requirement for surgery for persons born in Michigan and other states requiring surgery to amend the gender on a birth certificate but made it impossible and even more burdensome for Michigan residents born in states where birth certificate gender changes were unavailable or required a court order. (Compl. ¶¶ 2-3.)

Once this lawsuit commenced, Defendant vigorously defended the constitutionality of her policy through her motion to dismiss (and, when that motion was denied, her motion for reconsideration). (*See* Dkt. ## 16, 40.) Even after this Court, in denying Defendant's motion to dismiss, effectively ruled that Defendant's policy is unconstitutional, Defendant persisted in enforcing and defending it. (*See* Def.'s Answer & Affirm. Defenses, Dkt. # 38, at Pg ID 370 ("The Driver's License policy does not violate any of the Plaintiffs' constitutional rights.").) Then, less than a week before Defendant's staff were scheduled to be deposed (*see* Notice of Depositions, Group Exhibit 8 to Kaplan Decl.) and shortly after Plaintiffs had noticed a deposition for the Secretary herself (*see* Notice of Ruth Johnson Deposition, Exhibit 9 to Kaplan Decl.), Defendant abruptly announced that her policy has changed and filed the instant motion asking for this case to be dismissed.

## ARGUMENT

Defendant's motion should be denied for three independent reasons. First, Defendant seeks judgment on the pleadings under Rule 12(c), but there is nothing in the pleadings that supports dismissal of this case as moot. Second, under the voluntary cessation doctrine, Defendant has failed to meet her heavy burden of proving that the wrongful conduct giving rise to this lawsuit will not resume after the case has been dismissed. And third, the case is not moot because Defendant's new policy, although less burdensome than before, has not completely eradicated the harm that gave rise to this lawsuit.

## I.    Judgment on the pleadings is not appropriate because Defendant's motion is based on facts that are not in the pleadings.

As a threshold matter, Defendant's motion is fatally flawed under the applicable legal standard for judgment on the pleadings. "Motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) are analyzed under the same standard as motions to dismiss pursuant to Rule 12(b)(6)." *Newman v. Trott & Trott, P.C.*, 889 F. Supp. 2d 948, 956 (E.D. Mich. 2012) (Edmunds, J.) (citing *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010)). Under this familiar standard, the court must "construe the complaint in the light most favorable to the plaintiff, accept all its allegations as true, . . . draw all reasonable inferences in favor of the plaintiff," *id*., and deny the motion if the "pleaded factual content

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2007).

This Court has already denied Defendant's motion to dismiss under the Rule 12(b)(6) standard. (*See* Dkt. # 36.) Although Defendant now asserts that the policy challenged by Plaintiffs' complaint has been "updated," Defendant bases that assertion on facts wholly outside the pleadings—facts set forth only in the text of a brief authored by Defendant's counsel. Therefore, under the applicable legal standard, judgment on the pleadings is not appropriate.

Had Defendant submitted evidence regarding her purported change in policy, then it might be appropriate to convert her motion to one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 502-03 (6th Cir. 2006). However, not a single affidavit or any other piece of evidence accompanies Defendant's motion. Therefore, the Court should decide, and deny, the motion based on the pleadings alone.

## II.     Defendant has not met her heavy burden of proving that it is absolutely clear that the challenged conduct will not start up again.

Defendant's mootness claim is governed by the "voluntary cessation" doctrine, described by the Supreme Court as follows:

> It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to his

> old ways. In accordance with this principle, the standard we
> have announced for determining whether a case has been
> mooted by the defendant's voluntary conduct is ***stringent***: A
> case might become moot if subsequent events made it
> ***absolutely clear*** that the allegedly wrongful behavior could not
> reasonably be expected to recur. The ***heavy burden*** of
> persuading the court that the challenged conduct cannot
> reasonably be expected to start up again lies with the party
> asserting mootness.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189

(2000) (citations, quotation marks, and alterations omitted; emphasis added). The

"heavy burden" is a burden of proof. *See Cleveland Branch, NAACP*, 263 F.3d at

531; *Vencor, Inc. v. Webb*, 33 F.3d 840, 844 (7th Cir. 1994); *Carr v. Alta Verde*

*Indus., Inc.*, 931 F.2d 1055, 1064 n.7 (5th Cir. 1991). Defendant cannot satisfy this

heavy burden.

### A.     There has been no legislative repeal of the challenged policy.

Defendant relies principally on *Brandywine, Inc. v. City of Richmond*, 359

F.3d 830 (6th Cir. 2004), where the Sixth Circuit held that a challenge to the

constitutionality of a city's zoning ordinance became moot when the ordinance was

repealed. *Brandywine* is distinguishable, however, because it is based on the

established line of precedent that a *legislative* repeal ordinarily renders a case

moot, as it is the product of a deliberative process that permanently changes the

law. *See, e.g.*, *Kentucky Right to Life, Inc. v. Terry*, 108 F.3d 637, 644-45 (6th Cir.

1997). In this case, by contrast, there was no legislative repeal: Defendant

exercised her unfettered discretion in unilaterally changing the policy, and she is completely unconstrained from changing it back again.

The controlling case, therefore, is the Sixth Circuit's decision in *Akers v. McGinnis*, 352 F.3d 1030 (6th Cir. 2003). In *Akers*, the plaintiffs challenged a written rule of the Michigan Department of Corrections (MDOC) and, during the course of the litigation, the rule was substantially revised. The Sixth Circuit rejected MDOC's mootness argument: "In the present case, as the promulgation of work rules appears to be solely within the discretion of the MDOC, there is no guarantee that MDOC will not change back to its older, stricter Rule as soon as this action terminates." *Id*. at 1035. Here, as in *Akers*, the challenged policy is solely within the Secretary of State's discretion, and she is free to change back to the old policy as soon as this case is over.[2]

**B.    There is no evidence in the record to support Defendant's motion.**

As noted above, Defendant has submitted absolutely no evidence in support of her motion. No affidavit or other document proves that the asserted policy

---

[2] *Akers* is in agreement with other courts that have rejected mootness arguments based on non-legislative changes in policy. *See Bell v. City of Boise*, 709 F.3d 890, 900 (9th Cir. 2013) (rejecting mootness argument based on police chief's "special order" because it "is not a formal written enactment of a legislative body"); *Sefick v. Gardner*, 164 F.3d 370, 372 (7th Cir. 1998) ("[T]he current . . . policy, adopted after the commencement of this suit, is not implemented by statute or regulation and could be changed again, so this voluntary cessation of the challenged conduct does not eliminate the controversy.").

change has taken place, proves that it is being implemented, explains what motivated the purported policy change, or demonstrates that it is permanent.[3] As soon as this case is dismissed, Defendant will be "free to return to [her] old ways." *Friends of the Earth*, 528 U.S. at 189. With no evidence in the record to support Defendant's motion, it is far from "absolutely clear" that, upon dismissal, Defendant won't simply resurrect the old policy. *Id*. If a "heavy burden" of proof means anything, it means that a defendant cannot prove mootness without an iota of evidence to support her motion.

### C.   Defendant's office has a history of changing the policy and reversing policy changes under political pressure.

Defendant's mootness argument is further weakened by the fact that her office has a history of making unilateral changes to the policy at issue in this case, including reversing policy changes in quick succession and under political pressure. *See Wall v. Wade*, 714 F.3d 492, 497 (4th Cir. 2013) (holding that a state prison's Ramadan policy change did not moot the claims, especially since "the fact that at least three separate policies have been utilized [] since 2009 indicates some degree of doubt that the new policy will remain in place for long"); *Longstreth v. Maynard*, 961 F.2d 895, 900 (10th Cir. 1992) (finding free exercise challenge was

---

[3] *See Harrell v. The Florida Bar*, 608 F.3d 1241, 1266 (11th Cir. 2010) ("[W]e look for a well-reasoned justification for the cessation as evidence that the ceasing party intends to hold steady in its revised (and presumably unobjectionable) course.").

not moot due to change in hair grooming policy since policy had been repeatedly changed in the past); *Charles v. Daley*, 749 F.2d 452, 458 (7th Cir. 1984) (rejecting mootness argument because state had repeatedly made changes to the policy in question, thereby persuading the court that additional changes reverting back to the challenged policy "would not be unlikely"). As in *Wall*, *Longstreth*, and *Charles*, based on the history of changes specific to the policy in question, there is every reason to believe that another policy reversal would take place after this case is dismissed.

Exhibits 1 and 2 to the Kaplan Decl., produced by Defendant during discovery, show that there have been at least seven changes to the relevant policy prior to policy change that purportedly just took place. Significantly, in at least one instance in 2005, the Secretary of State changed the policy to make it easier to change the gender designation on a license or ID, only to reverse that policy a few weeks later and reinstitute the older, more burdensome policy. (Kaplan Decl. Ex 2 at p. 3.)

Additionally, socially conservative activists and politicians have used the policy as a political weapon, placing intense political pressure on Republican candidates to adopt a more restrictive policy that prohibits gender changes on driver's licenses and state IDs. In the 2010 primary election for Secretary of State, former Secretary of State Terri Lynn Land was criticized over the temporary 2005

policy change, and the Campaign for Michigan Families, run by now-Representative Gary Glenn, demanded to know then-candidate Ruth Johnson's position on the issue. (*See* Kaplan Decl. at Exhibit 5.) Johnson eventually replied that she did "not support allowing people to change their gender on their license as a result of surgery or lifestyle," earning the praise of the conservative group. (*Id.*) When Johnson took office, she instituted the extremely restrictive 2011 policy requiring an amended birth certificate to change the gender on a driver's license or state ID. (Compl. ¶¶ 42-44.)

Defendant's recently announced policy evidences Defendant's awareness of the political pressure she anticipates, since Defendant has refused to directly adopt a non-surgical standard for changing the gender on a license—a move that had resulted in criticism of the Land administration and became an issue in Secretary Johnson's campaign—but has instead agreed to accept a passport as proof of a gender change.  It is difficult to believe, however, that Defendant's new and still-deficient policy will not result in public criticism, since it allows Michiganders who are able to obtain a passport to change the gender on their license without having surgery.

Based on this history, it is likely, if not certain, that Defendant's most recent change in policy will also encounter political resistance from activist groups and politicians opposed to transgender rights. If this lawsuit is dismissed, there is every

reason to believe that Defendant—and candidates to succeed her in office—will be pressured to revert back to the old policy.[4] Absent a final judgment enjoining that policy as unconstitutional, Defendant and her office would be "free to return to [their] old ways." *Friends of the Earth*, 528 U.S. at 189.

### D. The timing of Defendant's motion weighs strongly against mootness.

The timing of Defendant's purported change in policy also undermines her claim of mootness.  "[A] defendant's cessation before receiving notice of a legal challenge weighs in favor of mootness, while cessation that occurs late in the game will make a court more skeptical of voluntary changes that have been made." *Harrell v. The Florida Bar*, 608 F.3d 1241, 1266 (11th Cir. 2010) (citation and internal quotation marks omitted). An example is *DeJohn v. Temple University*, 537 F.3d 301, 309 (3d Cir. 2008), where the court rejected the defendant's mootness argument because the change in policy took place "more than a year after

---

[4] Sadly, anti-transgender legislation has become the political weapon of choice for reactionary policymakers. *See, e.g.*, Dave Philipps, *North Carolina Bans Local Anti-Discrimination Policies*, N.Y. TIMES, (Mar. 23, 2016), Exhibit 10 to Kaplan Decl. (describing "wide-ranging bill barring transgender people from bathrooms and locker rooms that do not match the gender on their birth certificates"). In Michigan, state legislators have been eager to stoke anti-transgender sentiment based on modest, non-binding recommendations by the state board of education to create a safe learning environment for LGBTQ youth. *See* Brian McVicar, *Michigan Lawmaker Says LGBT Guidelines Take Away Parental Rights, 'Upsets' Student Privacy*, MLIVE, (Mar. 22, 2016), Exhibit 11 to Kaplan Decl. (reporting that House Speaker Kevin Cotter is condemning the state board of education for "eliminating parental authority" over "bathroom and locker room access").

the commencement of litigation and then only near the end of discovery, less than three weeks before the dispositive motions deadline in the case." *See also Rich v. Fla. Dep't of Corrs.*, 716 F.3d 525, 532 (11th Cir. 2013) (holding that the change to the state's kosher meal policy did not render the plaintiff's claims moot when the change was made "late in the game" in the litigation). Similarly, courts reject mootness arguments when government policies are changed principally "out of a desire to avoid liability." *Sheeley v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1187 (11th Cir. 2007) (reasoning that "[i]f we conclude that [plaintiff's] claims are moot, then should [the defendant] determine that future litigation is unlikely, it may well calculate that its new policy is no longer the preferable course of action and revert to the old policy it prefers and apparently believes to be legal"); *see also Moyle v. Cty. of Contra Costa*, No. C-05-02324 JCS, 2007 WL 4287315, at *13 (N.D. Cal. Dec. 5, 2007) (rejecting mootness argument where challenged strip-search policy was changed "only in response to litigation").

This case is similar. For years prior to the commencement of this lawsuit, the ACLU attempted to persuade Defendant to change her policy because it was harmful and unconstitutional, but Defendant refused. (*See* Kaplan Decl. at Group Exhibit 6.) Once this lawsuit commenced, Defendant vigorously defended the constitutionality of her policy through her motion to dismiss (and, when that motion was denied, her motion for reconsideration). (*See* Dkt. ## 16, 40.) Even

after this Court, in denying Defendant's motion to dismiss, effectively ruled that Defendant's policy is unconstitutional, Defendant persisted in enforcing and defending it. (*See* Def.'s Answer & Affirm. Defenses, Dkt. # 38, at Pg ID 370 ("The Driver's License policy does not violate any of the Plaintiffs' constitutional rights.").) Then, less than a week before Defendant's staff were scheduled to be deposed (*see* Kaplan Decl. at Group Exhibit 8) and shortly after Plaintiffs had noticed a deposition for the Secretary herself (*see id.* at Exhibit 9), Defendant abruptly announced that her policy has changed and asked for the case to be dismissed. Michael Wartella admitted that the change in policy was the result of this lawsuit, which strongly suggests that if the case is dismissed the Defendant may sooner or later return to her previous restrictive policy. *Sheeley,* 505 F.3d at 1189. Therefore, the timing of the purported policy change weighs heavily against mootness.

* * *

In sum, Defendant has failed to produce any evidence that this case is moot, and there has been no legislative repeal that would prevent her from returning to the old policy after this case is dismissed. That she may well do so is supported by her office's history of changing the policy at issue and reversing course under political pressure, as well as the last-minute timing of the purported policy change that took place here. Based on all these factors, it is far from "absolutely clear" that

16

Defendant will not go back to her old policy after this case is dismissed. *Friends of the Earth*, 528 U.S. at 189. Defendant carries a "heavy burden" of proof on this issue, *id.*, which she has not met. For that reason, her motion should be denied.

### III. The case is not moot because the new policy does not completely eradicate the harm caused by the challenged policy.

Even if Defendant were able to prove that the purported changes to her policy are permanent, dismissal of this case would still be improper because as explained below, her new policy continues to impose substantial and unjustified burdens on the ability of transgender people to change the gender designation on their driver's licenses and state IDs. In order to meet the heavy burden of establishing mootness, a defendant must prove not only that its practice has changed, but additionally that the change has "**completely** and irrevocably **eradicated** the effects of the alleged violation." *Ammex, Inc. v. Cox*, 351 F.3d 697, 705 (6th Cir. 2003) (internal quotation marks omitted) (emphasis added). A change in policy does not automatically render a case moot merely because the new policy "disadvantages [the plaintiffs] to a lesser degree than the old one." *Ne. Fla. Chapter of Associated Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 662 (1993). "A case is only moot when a live controversy no longer exists such that a court is no longer able to affect the legal relations between the parties." *Cam I, Inc. v. Louisville/Jefferson Cty. Metro. Gov't*, 460 F.3d 717, 719-20 (6th Cir. 2006).

The Sixth Circuit's decision in *Cam I*, *supra*, is dispositive. In that case, the plaintiffs challenged a local licensing ordinance for adult entertainment establishments on various constitutional grounds. During the litigation, the ordinance was amended to "ameliorate the harsh effects of the licensing provisions," *id*. at 719, at which point the defendant municipality sought dismissal on grounds of mootness. The Sixth Circuit rejected the mootness argument because, although the amended ordinance was an improvement and obtaining a license was less difficult than under the old ordinance, "[t]he amendments . . . did not *completely* remove the alleged harm," *id*. at 720 (emphasis added), and the plaintiffs continued to believe that the ordinance was unconstitutional. "In other words, where the changes in the law *arguably* do not remove the harm or threatened harm underlying the dispute, the case remains alive and suitable for judicial determination." *Id*. (internal quotation marks omitted) (emphasis added).

The same rule applies here. According to Defendant, she has "updated" her policy to allow individuals to present a U.S. passport, passport card, or court order to correct the gender on their Michigan driver's license or state ID. (Def.'s Mot. for J. on the Pleadings, Dkt. # 48, at Pg ID 459-460.) Although this is an improvement in Defendant's policy because it expands the types of documentation that can be used to correct the gender designation on a Michigan ID, it does not completely eliminate the irrational and unjustified burdens imposed on transgender persons

who wish to obtain accurate state-issued identification. Many people have no need, desire, or ability to obtain a U.S. passport: some simply have no plans to travel internationally; for low-income individuals,[5] the expense of obtaining a U.S. passport is prohibitively expensive or would impose a manifest hardship; and for non-U.S. citizens, obtaining a U.S. passport is literally impossible. In addition, to obtain a passport with the new gender on it, a transgender person must have a physician sign a letter supporting the gender change, whereas many states have policies for gender changes that allow other medical providers, such as counselors, to certify a person's gender change. The burden of requiring a physician's affidavit is significant for transgender people who face huge disparities in access to health care, through lack of insurance, insurance or Medicaid coverage policies that often exclude coverage for services related to gender transition,[6] and frequent

---

[5] Transgender people are four times more likely to have a household income under $10,000 and twice as likely to be unemployed as the typical person in the United States. Almost one in five has been homeless at some point in their lives. Transgender people of color have an unemployment rate four times the national average. *See* Brad Sears & Lee Badgett, *Beyond Stereotypes: Poverty in the LGBT Community*, Williams Institute (June 2012), Exhibit 12 to Kaplan Decl.; Jaime M. Grant et al., *Injustice at Every Turn: A Report of the National Transgender Discrimination Survey*, National Center For Transgender Equality And National Gay And Lesbian Task Force (2011), Exhibit 13 to Kaplan Decl., at 22 (finding that "[f]ifteen percent (15%) of our respondents reported making under $10,000/year, nearly four times the rate of this household income category for the general population.").

[6] *See* Michigan Department of Health and Human Services, Medicaid Provider Manual, Outpatient Therapy, Exhibit 14 to Kaplan Decl., at p. 12; Andrew M.

discrimination by health care providers.[7] In essence, Defendant's "updated" policy requires transgender individuals to jump through challenging bureaucratic hoops seeking unnecessary, expensive, and in some cases unavailable documentation from the federal government just to obtain accurate identification from the state, whereas everyone else can simply obtain accurate ID directly. The policy thus continues to impose a unique burden on transgender people in Michigan that is not justified by any rational basis, let alone a compelling or important governmental interest.[8]

Admittedly, for some transgender people (for example, those who already have passports or can obtain one without hardship), the new policy described in Defendant's brief would likely prove to be a marked improvement over the previous policy. However, even if this Court finds that Plaintiffs' challenge to the 2011 policy is moot, which Plaintiffs dispute, Plaintiffs' challenge to the new policy remains. Plaintiffs' argument at the summary-judgment and/or trial stages of

---

Seaman, *Transgender people face discrimination in healthcare*, Reuters (March 13, 2015), Exhibit 15 to Kaplan Decl.

[7] *Injustice at Every Turn* at 72-73.

[8] Defendants also allude to the possibility of presenting "a court order changing the sex of the individual." (Def.'s Mot. for J. on the Pleadings, Dkt. # 48, at Pg ID 460.) However, in Michigan there does not appear to be any known cause of action, procedural mechanism, or established legal standard for obtaining such an order. Therefore, this aspect of the "update" to Defendant's policy is all but useless.

this case that the new policy is unconstitutional is different, and possibly more challenging, than their challenge to the 2011 policy. But this goes only to the *merits* of Plaintiffs' legal claims, not the jurisdiction of this Court under the mootness doctrine.

The Supreme Court emphasized this critical distinction in *Chafin v. Chafin*, 133 S. Ct. 1017, 1024 (2013), warning against confusing "mootness with the merits" and explaining that a plaintiff's "prospects of success are . . . not pertinent to the mootness inquiry." Under *Chafin*, then, Defendant's motion to dismiss the case as moot is not the proper vehicle to litigate the substantive merits of Plaintiffs' constitutional claims. Rather, Plaintiffs should be permitted to develop a record challenging the constitutionality of the new policy and present it to the Court in the full course of litigation. In other words, there is still a "live controversy" between the parties: If Plaintiffs are correct in their belief that the "updated" policy remains unconstitutional, this Court will be "able to affect the legal relations between the parties." *Cam I*, 460 F.3d at 719-20. For that reason, this case is not moot.

## CONCLUSION

Defendant's motion for judgment on the pleadings on grounds of mootness should be denied.

Respectfully submitted,

/s/ Michael F. Derksen

21

Daniel S. Korobkin (P72842)
Jay D. Kaplan (P38197)
Michael J. Steinberg (P43085)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org
jkaplan@aclumich.org
msteinberg@aclumich.org

John A. Knight
American Civil Liberties Union
  Foundation
180 N. Michigan Avenue, Suite 2300
Chicago, IL 60606
(312) 201-9740
jaknight@aclu.org

Steven R. Gilford
Michael F. Derksen
Jacki L. Anderson
PROSKAUER ROSE LLP
70 West Madison, Suite 3800
Chicago, IL 60602
(312) 962-3550
sgilford@proskauer.com
mderksen@proskauer.com
jlanderson@proskauer.com

Attorneys for Plaintiffs

Dated: April 4, 2016

**CERTIFICATE OF SERVICE**

I hereby certify that on April 4, 2016, the foregoing document and its attachments were filed electronically using the Court's ECF system, which will provide electronic notice to all counsel of record.

/s/ Michael F. Derksen