UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EMANI LOVE, ET AL.,

    Plaintiffs,

v.

RUTH JOHNSON,

    Defendant.
                                            /

Case No. 15-11834

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT'S CONVERTED MOTION FOR SUMMARY JUDGMENT [48]**

On May 21, 2015, Plaintiffs, a group of transgender individuals, filed this civil rights action asserting a constitutional challenge to the Michigan Secretary of State's policy (the "Policy") for changing the gender on a state-issued ID. According to Plaintiffs, the Policy makes it unduly burdensome–and in some cases impossible–for members of the transgender community to obtain an ID reflecting their lived gender. This is so, they maintain, because the Policy requires applicants to obtain an amended birth certificate; a document many states will not provide under any circumstances.

On November 16, 2015, the Court denied Johnson's motion to dismiss the complaint, finding that the Policy directly implicated Plaintiffs' fundamental right to privacy under the Fourteenth Amendment. *See Love v. Johnson*, 146 F.Supp.3d 848 (E.D. Mich. 2015). Shortly after the Court issued its order, Johnson amended the Policy in a significant way. Specifically, a Michigan resident is no longer required to produce an amended birth certificate to change the gender on their state ID. According to Johnson, because the

State voluntarily eliminated this requirement, this case is now moot under Federal Rule of Civil Procedure 12(c). For the reasons stated more fully below, the Court GRANTS Johnson's converted motion for summary judgment.[1]

## I. BACKGROUND

Shortly after Michigan Secretary of State Ruth Johnson ("Johnson" or "Defendant") was elected to office in 2010, she instituted a policy (the "Policy") requiring an amended birth certificate to change the gender on a state-issued ID. (Compl. ¶¶ 42-44). As this Court previously discussed,

> [b]ecause state laws differ in terms of whether and how an individual can amend the gender on their birth certificate, the practical effect of the Policy varie[d]. Under Michigan law, Plaintiffs Emani Love and A.M. [were] required to undergo sex-reassignment surgery to procure an amended birth certificate. (*Id.* at ¶5(c)). By contrast, Plaintiffs Tina Seitz, Codie Stone, and E.B. '[could not] obtain an accurate [Michigan] driver's license under any circumstances because their state of birth does not allow them to amend the gender on their birth certificate.' (Compl. ¶ 5(a)).

*Love,* 146 F.Supp.3d at 851. In this way, the Policy created various subclasses based solely on an individual's state of birth. *Id.* Ultimately, the Court concluded that the Policy posed "a real threat to [Plaintiffs'] personal security and bodily integrity" under the Due Process Clause of the Fourteenth Amendment, and rejected Johnson's motion to dismiss the complaint. *Id.* at 855.

---

[1] Under Rule 12(c), the Court is prohibited from considering matters outside the pleadings unless they are "referred to in the plaintiff's complaint and are central to [the] claim." *Weiner v. Klas & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1998). Where, as here, Johnson's argument relies on a deposition transcript and an affidavit, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Because Plaintiffs have also incorporated a number of matters outside the pleadings in their supplemental brief, the Court finds that they have been given a "reasonable opportunity to present all the material that is pertinent to [a Rule 56] motion." *Id.* The Court thus converts Johnson's motion into one for summary judgment.

Approximately four months after this Court's decision, the Secretary of State published "a notice regarding an update to what is required for changing the sex designation on a driver license or personal identification card." ("new Policy") (Def.'s Reply Ex. B, Grace Ueberroth Aff. ¶ 2). Under the new Policy, an applicant seeking to change the gender on their state ID "must provide any one of the following documents that show a sex other than currently designated on the drivers license or [personal identification card]: a certified birth certificate, a valid US Passport, valid US Passport Card or court order changing the sex of the individual." (*Id.* at Ex. 2, Drivers License Manual). Significantly, the State will now accept a U.S. Passport or Passport Card to validate an applicant's gender. This development is particularly important to the transgender community–and, by extension, this case–because, according to Plaintiffs, the U.S. Department of State only requires a doctor's certification that a person "has had appropriate clinical treatment for gender transition" to change the gender on his or her passport. (Compl. at ¶ 45(a)). By adopting the new Policy and "voluntarily abandoning the requirement to provide a certified birth certificate as proof to change [] an individual's sex designation on his or her [ID]," (Def.'s Mot. 5), Johnson maintains that she "has remedied any alleged constitutional violation . . . ." claimed by Plaintiffs. (*Id.*). On March 10, 2016, the day the new Policy was adopted, Johnson filed the instant motion to dismiss asserting that Plaintiffs' complaint is now moot.

## II.   STANDARD OF REVIEW

Johnson's principal argument requires the Court to consider a deposition transcript and affidavit. *See* (Def.'s Supp. Br. Ex. A and C). Ordinarily, such " '[m]atters outside of the pleadings are not to be considered by a court in ruling on a 12[c] motion to dismiss,' and

3

a court that considers such matters must first convert the motion to dismiss to one for summary judgment, Fed.R.Civ.P. 12(d).'" *Kovac v. Superior Dairy, Inc.*, 930 F. Supp. 2d 857, 862 (N.D. Ohio 2013) (quoting *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir.1997). Plaintiffs, in their supplemental brief, likewise rely upon a number of documents outside the pleadings. *See* (Dkt. 76). The Court thus converts Johnson's motion and considers her request under the summary judgment framework set forth under Federal Rule of Civil Procedure 56.

It is well established that summary judgment under Rule 56 is proper when the movant "shows that there is no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326–27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* Furthermore, the "substantive law will identify which facts are material, and summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When considering the material facts on the record, a court must bear in mind that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

### III. ANALYSIS

"Under Article III of the Constitution, [a federal court's] jurisdiction extends only to

actual cases and controversies. [A federal court has] no power to adjudicate disputes which are moot." *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc) (quotation omitted). "Claims become moot when the issues presented are no longer 'live' or parties lack a legally cognizable interest in the outcome." *Brandywine, Inc. v. City of Richmond, Ky.*, 359 F.3d 830, 836 (6th Cir. 2004) (internal quotation marks and citations omitted). A federal court "can neither declare unconstitutional nor enjoin the enforcement of a provision that is no longer in effect." *Id.*

While there is no question that the Secretary of State has abandoned the Policy giving rise to this litigation, Plaintiffs assert that Johnson has failed to meet her "heavy burden of proving that the challenged conduct will not start up again." (Plfs.' Resp. 8). As the Supreme Court explained in *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.* "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." 528 U.S. 167, 190, 120 S. Ct. 693, 708, 145 L. Ed. 2d 610 (2000). But context is important; *Friends of the Earth,* "is the appropriate standard for cases between private parties, but this is not the view [many circuits] have taken toward acts of voluntary cessation by government officials . . . ." *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 982 (6th Cir. 2012) (quoting *Fed'n of Adver. Indus. Representatives v. City of Chicago,* 326 F.3d 924, 929 (7th Cir. 2003). Indeed, as the Sixth Circuit has noted, cessation of illegal conduct by "government officials has been treated with more solicitude by the courts than similar action by private parties[;] self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine." *Id.* at 981 (quoting *Mosley v. Hairston*, 920 F.2d 409, 415 (6th Cir. 1990).

For that reason, "[l]egislative repeal or amendment of a challenged statute while a case is pending . . . usually eliminates [the] case-or-controversy because a statute must be analyzed by the . . . court in its present form." *Id*; *see also Brandywine,* 359 F.3d at 836 (absent an expressed "intention to re-enact the offending legislation . . . . " the passage of an amendment provides sufficient assurance that the case is moot.) However, as Plaintiffs correctly point out, here "there was no legislative repeal: Defendant exercised her unfettered discretion in unilaterally changing the policy, and she is completely unconstrained from changing it back again." (Plf.'s Br. 10). But accepting Plaintiffs argument would, in effect, render voluntary governmental compliance meaningless outside of the legislative sphere. Surely this is not what the Sixth Circuit intended by specifically distinguishing self-corrective measures adopted by government officials from private parties. *See Id.* at 982 ("we place greater stock in [government officials] acts of self-correction, so long as they appear genuine.") (quoting *Fed'n of Adver. Indus.,* 326 F.3d at 929). On the other hand, recognizing that Johnson's unilateral power does not fit neatly in the *Brandywine* (legislative action) or *Friends of the Earth* (private party) line of cases, the better approach, in this Court's view, is to evaluate the sincerity of her voluntary compliance.

Here, "there is no evidence in the record that [Johnson] has announced any intention of, or made any threat to" revert back to the old Policy. *Id.* at 981 (concluding that the plaintiff's claims were moot in light of the passage of a new ordinance). On the contrary, Johnson has consistently maintained that she has "absolutely no intention of changing the new Policy . . . ." (Def.'s Supp. Br. Ex. A, Johnson Aff. at ¶ 4; Ex. C, Johnson Dep. at 63). This sentiment has likewise been echoed by Michael Wartella, Johnson's so-called "expert"

6

advisor in this area. *See Id.* (Ex. B, Wartella Dep. at 52-53). And for good reason; the new Policy–which has been in effect for nearly six months–constitutes an entirely new way of doing business at the Secretary of State. *See* (Def.'s Reply Ex. B, Ueberroth Aff., ¶ 2). Reincarnating the old Policy would be a significant waste of state resources and, as a practical matter, a fool's errand. As this Court made clear in its order denying Johnson's initial motion to dismiss, because the old Policy directly implicates Plaintiffs' fundamental right of privacy, it "cannot be upheld unless it satisfies strict scrutiny, [the] most rigorous and exacting standard of constitutional review." *Miller v. Johnson*, 515 U.S. 900, 920, 115 S. Ct. 2475, 2490, 132 L. Ed. 2d 762 (1995). "Strict scrutiny has been applied so that 'essentially no governmental interest sufficed to justify infringement, making strict scrutiny . . . 'fatal in fact, . . . .'" *United States v. Brandon*, 158 F.3d 947, 956 (6th Cir. 1998); (quoting Ashutosh Bhagwat, Hard Cases and the (D)evolution of Constitutional Doctrine, 30 Conn. L.Rev. 961, 964 (1998). There is little doubt that Johnson's decision was motivated, at least in part, by this realization.

Nor does Plainitffs' reliance on *Akers v. McGinnis*, 352 F.3d 1030 (6th Cir. 2003) suggest that the result should be any different. There, the Michigan Department of Corrections ("MDOC") repealed a series of contested work regulations while the case was still pending. Nevertheless, the Sixth Circuit held that the repeal did not moot the case for two reasons. First, "there was no guarantee that MDOC [would] not change back to its older, stricter [r]ule as soon as [the] action [was] terminate[d]." *Id.* at 1035. More importantly, however, because "the plaintiffs could be entitled to money damages and the purging of their disciplinary records if the old version of the [r]ule was found to be unconstitutional, . . . it [was] incumbent on [the] court to examine all versions of the [r]ule."

7

*Id.* In other words, the amended regulations did not completely eradicate the harm associated with the contested policies.

The concerns raised in *Akers* are simply not present here. While Johnson could, theoretically, revert back to the old Policy, it would fly in the face of her sworn declaration to this Court and present serious–and seemingly insurmountable–constitutional obstacles.[2] Furthermore, it's unclear how, at this juncture, the Court could "affect the legal relations between the parties." *Cam I, Inc. v. Louisville/Jefferson Cty. Metro Gov't*, 460 F.3d 717, 719-20 (6th Cir. 2006). Plaintiffs' complaint seeks "declaratory and injunctive relief from Defendant's unconstitutional Driver's License Policy . . . . ", defined as the policy implemented by Johnson in 2011. (Compl. ¶¶ 2, 11). But that policy is no longer in effect, and Plaintiffs have not sought leave to amend their complaint to challenge the new Policy. *See Bench Billboard Co.*, 675 F.3d at 982 (unlike other cases declining to apply the mootness doctrine, here the city "imposed an entirely new statutory scheme in place of the repealed ordinance, and there are no allegations that the scheme poses any constitutional issues.") In fact, Plaintiffs appear to implicitly agree that the new Policy, which essentially mirrors the federal government's position on amending identity documents, is reasonable. *See* (Compl. at ¶¶ 10, 45) ("The U.S. Department of State requires only that a doctor certify that a person seeking a gender change on a driver's license 'has had appropriate clinical treatment for gender transition to the new gender' . . . ."); ("In stark contrast to Michigan . . . the federal government . . . [has] modernized [its] policies for correcting the gender on identity documents . . . . ").

---

[2] The Court notes that any future challenges to the Policy initiated by Plaintiffs would satisfy the "companion" criteria set forth under Local Rule 83.11(b).

In sum, the Court finds Johnson's voluntary cessation of the allegedly illegal conduct to be genuine. Hanging in the balance is a new, less restrictive policy that Plaintiffs agree conforms to "current scientific knowledge and research regarding transgender individuals and the medical standard of care for treating persons diagnosed with gender dysphoria." (*Id.* at ¶ 45)*.* Because the old Policy has been abandoned, there is no longer a "live controversy" between the parties, and the Court must, and does GRANT Defendant's motion to dismiss under the mootness doctrine.

Accordingly, Defendant's motion to dismiss is hereby GRANTED. (Dkt. 48). This order closes the case in its entirety.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  August 23, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 23, 2016, by electronic and/or ordinary mail.

s/Carol J. Bethel
Case Manager